No. 26-12641-GG

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

MARVELLE J. BALLENTINE,

*Appellant*,

v.

DEVIN S. ANDERSON;
META PLATFORMS, INC.; and
CHRISTOPHER W. KEEGAN,

*Appellees*.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
CASE NO. 5:26-cv-00472-AGM-PRL

---

# BRIEF FOR DEFENDANTS-APPELLEES

---

MARIANNA C. CHAPLEAU
*Counsel of Record*
KIRKLAND & ELLIS LLP
830 Brickell Plaza
Miami, FL 33131
Telephone: +1 (305) 432-5687

*Counsel for Appellees Devin S. Anderson & Christopher W. Keegan*

ERIC A. SHUMSKY
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Ave., NW
Washington, D.C. 20037
Telephone: +1 (202) 339-8400

*Counsel for Appellee Meta Platforms, Inc.*

*(Additional counsel on next page)*

NICHOLAS GONZÁLEZ
*Counsel of Record*
ORRICK, HERRINGTON &
SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Telephone: +1 (415) 773-5700

*Counsel for Appellee Meta Platforms, Inc.*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rules 26-1-1, 26.1-2, and 26-1.3, Appellees Devin S. Anderson, Meta Platforms, Inc., and Christopher W. Keegan certify that the following Certificate of Interested Persons and Corporate Disclosure Statement lists the trial judges, attorneys, persons, associations of persons, firms, partnerships, corporations, and other legal entities that have an interest in the outcome of this case, including subsidiaries, conglomerates, affiliates, and parent corporations.

1. Accenture LLP – Former Defendant
2. Anderson, Devin S. – Defendant-Appellee
3. Ballentine, Marvelle J. – Plaintiff-Appellant
4. Chapleau, Marianna C. – Counsel for Defendants-Appellees Anderson and Keegan
5. Deitchman, Ariel Deray – Counsel for Defendants-Appellees Anderson and Keegan
6. Fassbender, Diana Marie – Counsel for Defendant-Appellee Meta Platforms, Inc.
7. González, Nicholas – Counsel for Defendant-Appellee Meta Platforms, Inc.

8. Irick, Daniel C. – U.S. Magistrate Judge

9. Keegan, Christopher W. – Defendant-Appellee

10. Kirkland & Ellis LLP – Former Defendant and Counsel for Defendants-Appellees Anderson and Keegan

11. Lammens, Philip R. – U.S. Magistrate Judge

12. Malone, Patrick Owen – Counsel for Defendants-Appellees Anderson and Keegan

13. Meta Platforms, Inc. – Defendant-Appellee (NYSE symbol: META)

14. Moe, Anne-Leigh Gaylord – U.S. District Court Judge

15. Orrick, Herrington & Sutcliffe LLP – Counsel for Defendant-Appellee Meta Platforms, Inc.

16. Shumsky, Eric A. – Counsel for Defendant-Appellee Meta Platforms, Inc.

17. Sneed, Julie S. – U.S. District Court Judge

18. Spiwak, Lauren M. – Counsel for Defendants-Appellees Anderson and Keegan

## STATEMENT REGARDING ORAL ARGUMENT

Appellees respectfully submit that oral argument is not necessary for this appeal. The facts and legal arguments are adequately presented in the briefs and record, the governing law is well established, and the Court's decisional process will not be significantly aided by oral argument.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT .......... C-1

STATEMENT REGARDING ORAL ARGUMENT .......... i

TABLE OF CITATIONS .......... iv

INTRODUCTION .......... 1

STATEMENT OF JURISDICTION .......... 3

STATEMENT OF THE ISSUES .......... 4

STATEMENT OF THE CASE .......... 4

I. Ballentine Repeatedly Sues Meta and Accenture for Discrimination. .......... 4

A. Ballentine First Sues in California Federal Court and Voluntarily Dismisses Claims. .......... 4

B. Ballentine Refiles the Same Claims in Florida Federal Court and Then Moves to Transfer Back to California. .......... 6

II. Ballentine Repeatedly Files Tort Claims Against Meta and Accenture, Also Adding Accenture's Counsel as Defendants .......... 7

A. Ballentine First Sues in Florida Federal Court. .......... 7

B. Ballentine Files the Same Claims in Parallel in Florida State Court and Then Voluntarily Dismisses Suit. .......... 10

III. Ballentine's Record of Delay and Non-Compliance Despite the District Court's Warnings. .......... 11

IV. The District Court Dismisses Ballentine's Claims Against Appellees with Prejudice .......... 15

SUMMARY OF ARGUMENT .......... 18

STANDARD OF REVIEW .......... 19

ARGUMENT .......... 20

I. The District Court Did Not Abuse Its Discretion in Dismissing Ballentine's Claims for his Violation of a Court Order .......... 20

A. Ballentine Failed to Comply with the Standing Order Despite the Court's Warnings .......... 21

B. Ballentine's Record of Delay and Failing to Comply with Court Rules and Orders Supports the District Court's Dismissal with Prejudice .......... 24

II. This Court May Alternatively Affirm Dismissal Because Ballentine Failed to State A Claim .......... 31

A. Florida's Litigation Privilege Bars All of Ballentine's Claims .......... 31

B. Ballentine's Complaint Fails to State a Claim Because He Insufficiently Alleges Key Elements of Each Claim .......... 33

1. Ballentine Does Not Sufficiently Allege Defamation Against Anderson .......... 34

2. Ballentine Does Not Sufficiently Allege Conspiracy Against Meta .......... 36

3. Ballentine Does Not Sufficiently Allege Intentional Infliction of Emotional Distress. .......... 39

CONCLUSION .......... 41

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF CITATIONS*

**Page(s)**

**Cases**

*Alhassid v. Bank of Am., N.A.*,
60 F. Supp. 3d 1302 (S.D. Fla. 2014) ........ 38

*Am. Dental Ass'n v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010) ........ 38

*Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*,
831 So. 2d 204 (Fla. 4th DCA 2002) ........ 33

*Cave v. Singletary*,
84 F.3d 1350 (11th Cir. 1996) ........ 22

*Cherdak v. Cottone*,
2023 WL 2044608 (M.D. Fla. Feb. 16, 2023) ........ 32, 33

*Matter of Chicago, Rock Island & Pac. R. Co.*,
865 F.2d 807 (7th Cir. 1988) ........ 22

*Cohen v. McGuire*,
2016 WL 3188889 (M.D. Fla. June 8, 2016) ........ 37

*Curry v. Sec'y*,
665 F. App'x 766 (11th Cir. 2016) ........ 23, 25

*Davis v. Kvalheim*,
261 F. App'x 231 (11th Cir. 2008) ........ 29

*Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*,
950 So. 2d 380 (Fla. 2007) ........ 32

* Citations upon which Appellees primarily rely are marked with asterisks.

*Ellison v. Windt*,
2001 WL 118617 (M.D. Fla. Jan. 24, 2001) .......... 23

*Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*,
556 F.3d 1232 (11th Cir. 2009) .......... 20

*Fridovich v. Fridovich*,
598 So. 2d 65 (Fla. 1992) .......... 41

*Fullman v. Graddick*,
739 F.2d 553 (11th Cir. 1984) .......... 37

*Gaffney v. Rives*,
2023 WL 6049253 (M.D. Fla. Sep. 15, 2023) .......... 37

*Goforth v. Owens*,
766 F.2d 1533 (11th Cir. 1985) .......... 2, 25, 28

*Gratton v. Great Am. Commc'ns*,
178 F.3d 1373 (11th Cir. 1999) .......... 25, 28

*Hallmark Builders, Inc. v. Gaylord Broad. Co.*,
733 F.2d 1461 (11th Cir. 1984) .......... 35

*Holston v. Dawson*,
2023 WL 7485227 (11th Cir. Nov. 13, 2023) .......... 33

**Jackson v. BellSouth Telecomms.*,
372 F.3d 1250 (11th Cir. 2004) .......... 18, 31, 32

*Jews For Jesus, Inc. v. Rapp*,
997 So. 2d 1098 (Fla. 2008) .......... 36

*Johns Hopkins All Children's Hosp., Inc. v. Kowalski*,
425 So. 3d 645 (Fla. Dist. Ct. App. 2025) .......... 41

*Keira v. United State*s,
400 F. App'x 477 (11th Cir. 2010) .......... 29, 30

*Lay v. Roux Lab'ys, Inc.*,
379 So. 2d 451 (Fla. 1st DCA 1980) .......... 40

*Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.*,
639 So. 2d 606 (Fla. 1994) .......... 31

*Lopez v. Target Corp.*,
676 F.3d 1230 (11th Cir. 2012) .......... 19, 39, 40

*Luczak v. Nat'l Beverage Corp.*,
812 F. App'x 915 (11th Cir. 2020) .......... 4

*Metro. Life Ins. Co. v. McCarson*,
467 So.2d 277 (Fla. 1985) .......... 39

*Moon v. Newsome*,
863 F.2d 835 (11th Cir. 1989) .......... 21, 25, 27

*Parnell v. Fla. Dep't of Corr.*,
181 F.4th 1209 (11th Cir. 2026) .......... 23

*Powell v. United States*,
800 F. App'x 687 (11th Cir. 2020) .......... 38

*Procup v. Strickland*,
792 F.2d 1069 (11th Cir. 1986) .......... 24

*Ross v. Blank*,
958 So. 2d 437 (Fla. Dist. Ct. App. 2007) .......... 32, 33

*Rubin v. U.S. News & World Rep., Inc.*,
271 F.3d 1305 (11th Cir. 2001) .......... 35, 36

*Silberman v. Miami Dade Transit*,
927 F.3d 1123 (11th Cir. 2019) .......... 31

*Turner v. Wells*,
879 F.3d 1254 (11th Cir. 2018) .......... 36

*United States v. Frazier*,
387 F.3d 1244 (11th Cir. 2004) .......... 19

*Valencia v. Citibank Int'l*,
728 So. 2d 330 (Fla. Dist. Ct. App. 1999) .......... 34

*Waldman v. Conway*,
871 F.3d 1283 (11th Cir. 2017) .......... 20

*Williams v. Worldwide Flight SVCS., Inc.*,
877 So. 2d 869 (Fla. 3d DCA 2004) .......... 39

*Williamson v. TransUnion LLC*,
2026 WL 1210224 (11th Cir. May 4, 2026) .......... 29, 30

**Zocaras v. Castro*,
465 F.3d 479 (11th Cir. 2006) .......... 19, 23, 24

**Statutes**

28 U.S.C. § 1291 .......... 4

28 U.S.C. § 1332 .......... 3, 12

**Rules**

Federal Rule of Civil Procedure 11 .......... 1, 16

Federal Rule of Civil Procedure 41 .......... 24, 30

# INTRODUCTION

This Court should affirm the district court's order dismissing Plaintiff-Appellant Marvelle J. Ballentine's frivolous lawsuit with prejudice. After Appellee Meta Platforms, Inc. allegedly disabled his Facebook account for violating Meta's Child Sexual Exploitation policy, Ballentine embarked on a spree of unsuccessful *pro se* lawsuits against Meta and Accenture LLP. He asserted discrimination claims against Meta and Accenture in California federal court and then proceeded to bring a host of tort claims in Florida federal court against not only these companies, but also Accenture's lawyers, Appellees Devin Anderson and Christopher Keegan. Ballentine alleges that Anderson's and Keegan's statements in the prior case's filings and litigation-related communications were defamatory and constituted intentional infliction of emotional distress.

Despite the district court's warnings that it may issue sanctions for failure to comply with court rules and orders—and after Ballentine's numerous failures to do so—Ballentine violated the court's standing order by failing to certify that his use of artificial intelligence (AI) comported with Federal Rule of Civil Procedure 11. Ballentine neither

made the required certification nor withdrew his non-compliant filings—even after the district court allowed him an additional forty-five days beyond the ten-day deadline to comply. The district court acted well within its discretion by dismissing Ballentine's action with prejudice.

District courts have both inherent power and authority under Federal Rule of Civil Procedure 41 to dismiss actions for failure to follow court orders. Dismissal with prejudice is proper when there is (1) "a clear record of delay or willful contempt" and (2) "an implicit or explicit finding that lesser sanctions would not suffice." *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985).[1] Here, Ballentine's record demonstrates both. Ballentine has delayed resolution of his claims at every turn, through forum shopping, repeated amendments to claims, and requests for more time, including to comply with the standing order. Ballentine has also demonstrated a refusal to comply with court rules and orders, such as page limitations, notice provisions, and the standing order itself, despite the district court's repeated warnings. Finally, given Ballentine's pattern of delay and that the district court had already granted

---

[1] Unless otherwise specified, all citations are cleaned up with emphases added.

Ballentine a significant extension of time to comply with the standing order, lesser sanctions would not have served the interests of justice here.

Regardless, there are alternative grounds to affirm because Ballentine's claims fail as a matter of law multiple times over. Florida's litigation privilege affords absolute immunity to an attorney's statements made during the course of judicial proceedings. This privilege clearly bars Ballentine's claims, which plainly arise from attorney statements made in filings and during the course of their representation. Ballentine's complaint also fails to state a claim for defamation because it does not sufficiently allege that the statements he challenges were false or defamatory. Nor does he state an emotional-distress claim because his complaint fails to sufficiently allege that these statements were extreme and outrageous enough to clear Florida's high bar for such a claim. This Court should affirm and put an end to this frivolous litigation.

## <u>STATEMENT OF JURISDICTION</u>

The district court had subject-matter jurisdiction over the underlying action pursuant to 28 U.S.C. § 1332. The district court entered final judgment, dismissing Appellant's suit with prejudice, on

July 24, 2026. Appellant filed a notice of appeal on July 28, 2026. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the district court acted within its discretion by dismissing Ballentine's claims with prejudice after he failed to comply with the court's order, given that (1) the record shows delay and willful contempt; and (2) lesser sanctions would not serve the interests of justice.

2. Whether the district court's dismissal should be affirmed on the alternative grounds that Ballentine's tort claims fail as a matter of law.

## STATEMENT OF THE CASE

This appeal arises from a series of lawsuits that Ballentine filed against Meta and Accenture, along with related parties.[2]

### I. Ballentine Repeatedly Sues Meta and Accenture for Discrimination.

#### A. Ballentine First Sues in California Federal Court and Voluntarily Dismisses Claims.

---

[2] "A court may take judicial notice of the existence of documents filed in related judicial proceedings." *Luczak v. Nat'l Beverage Corp.*, 812 F. App'x 915, 926 n.3 (11th Cir. 2020) (taking judicial notice of two related district court cases).

Ballentine's lawsuits began after Meta allegedly disabled his Facebook account for violating its Child Sexual Exploitation policy. In September 2025, Ballentine first sued Meta and Accenture in the Northern District of California. *Ballentine v. Meta Platforms, Inc.*, 3:25-cv-07671 (N.D. Cal. Sept. 9, 2025), Dkt. No. 1. Appellees Devin Anderson and Christopher Keegan from Kirkland & Ellis LLP represented Accenture in that litigation. Ballentine proceeded *pro se*. *Id.*, Dkt. Nos. 1, 12, 19.

In this first suit, Ballentine alleged that Meta discriminated against him when it disabled his Facebook account because of his race, and not for the stated reason of his violation of Meta's policy. *Id.*, Dkt. No. 1 ¶ 1. Ballentine alleged that Accenture, one of Meta's content moderators, ratified the discrimination by allegedly reviewing Ballentine's account and affirming the disablement. *Id.*, Dkt. No. 1 ¶ 46.

Meta and Accenture separately moved to dismiss. *Id.*, Dkt. Nos. 30, 33. Among other grounds for dismissal, Accenture argued that Ballentine's complaint failed to state a claim because it did not sufficiently allege that "but for" the purported racial discrimination, Ballentine's account would not have been disabled. *Id.*, Dkt. No. 33 at

10–11. As Accenture explained, the complaint did not affirmatively allege that Ballentine's account complied with all the relevant community standards, and therefore, Accenture's motion stated: "An alternative explanation for Accenture's recommendation—a legitimate community standards violation by Ballentine—is consistent with the facts alleged in the complaint." *Id.*, Dkt. No. 33 at 10.

After Meta and Accenture fully briefed their motions to dismiss, and shortly before the court had originally planned to hold oral argument, Ballentine voluntarily dismissed the action in February 2026. *Id.*, Dkt. No. 63.

### B. Ballentine Refiles the Same Claims in Florida Federal Court and Then Moves to Transfer Back to California.

Four days after dismissing his California lawsuit, Ballentine refiled his discrimination claims against Meta and Accenture in the Middle District of Florida.[3] *Ballentine v. Meta Platforms, Inc. et al.*, 3:26-cv-05939 (M.D. Fla. Feb. 17, 2026). All defendants moved to dismiss. *Id.*,

[3] Ballentine also added two defendants—Genpact Ltd. and TaskUs USA—asserting that they might have reviewed his Facebook account in 2022 instead of Accenture. *See Ballentine v. Meta Platforms, Inc. et al.*, 3:26-cv-05939 (M.D. Fla. Feb. 17, 2026), Dkt. No. 1.

Dkt. Nos. 29, 48, 85, 96. Meta also moved to transfer to the Northern District of California based on a forum-selection clause in Facebook's terms of service. *Id.*, Dkt. No. 87. Ballentine then cross-moved to transfer his case back to the Northern District of California—the same venue he had just avoided. *Id.*, Dkt. No. 108. The district court granted Meta's transfer motion and moved the case back to California. *Id.*, Dkt. Nos. 121, 122.

## II. Ballentine Repeatedly Files Tort Claims Against Meta and Accenture, Also Adding Accenture's Counsel as Defendants.

### A. Ballentine First Sues in Florida Federal Court.

After Meta and Accenture moved to dismiss Ballentine's California discrimination case, Ballentine filed this suit now on appeal. He brought tort claims against Meta, Accenture, and Accenture's counsel (Anderson and Keegan, along with their firm Kirkland) in Florida district court.[4] Dkt. No. 1. Ballentine asserted three claims: (1) defamation (against Anderson); (2) civil conspiracy to defame (against Anderson, Keegan, and Meta); and (3) intentional infliction of emotional distress (against Anderson and Keegan). Dkt. No. 20 ¶¶ 73–106.

---

[4] After initially filing the complaint, Ballentine dropped Accenture and Kirkland as defendants. *See* Dkt. No. 20.

Ballentine clearly alleged that his claims were based on statements and conduct from the California litigation: "This action arises from defamatory statements published by Devin S. Anderson on behalf of, and in defense of Accenture LLP in federal court filings that falsely implied Plaintiff committed child sexual exploitation violations." *Id.* ¶ 1. Ballentine alleged that Meta and Keegan conspired with Anderson (the signatory on the motion to dismiss) to defame Ballentine and that these statements caused him severe emotional distress. *Id.* ¶¶ 83–106.

Ballentine also alleged that Keegan added to his severe emotional distress when he asked Ballentine to include Anderson on email correspondence about the matter. Keegan told Ballentine that "Notice attorneys include Mr. Anderson and myself, so please continue to include him on communications." Dkt. No. 26 at 9; *see* Dkt. No. 20 ¶¶ 102–06. According to Ballentine, this email caused him severe emotional distress because Keegan "acted with knowledge of the [defamation] complaint's allegations, including … that Anderson is alleged to have caused Plaintiff severe emotional distress." Dkt. No. 20 ¶ 103.

All defendants moved to dismiss, arguing that Florida's litigation privilege barred Ballentine's claims, and in any case, Ballentine did not plausibly allege any of his claims. Dkt. Nos. 26, 44.

Ballentine then moved to file a "narrowed" amended complaint, which "would omit all claims against Meta Platforms, Inc; omit all claims against Christopher W. Keegan; eliminate all conspiracy and coordination allegations; proceed only against Defendant Devin S. Anderson; and assert a single count for defamation." Dkt. No. 66 at 2. Defendants Keegan and Anderson opposed Ballentine's request to amend the complaint for a third time, arguing that allowing the amendment would "serve[] no valid purpose and would cause undue delay and prejudice to Anderson." Dkt. No. 69 at 6. Anderson and Keegan further argued that the proposed third amendment would be futile because it "could not cure the defects in the remaining defamation claim against Anderson." *Id.* at 9.

Although the district court did not rule on this motion, by his own admission, Ballentine's only live claim against Appellees should be the

single count of defamation against Anderson for statements made in Accenture's motion to dismiss filed in the California federal court.[5]

### B. Ballentine Files the Same Claims in Parallel in Florida State Court and Then Voluntarily Dismisses Suit.

Weeks later, Ballentine filed a third lawsuit in Florida state court in which he asserted the same discrimination claims combined with the same tort claims in this action, adding defendants Kirkland and Accenture. *Ballentine v. Meta Platforms, Inc. et al.*, 35-2026-CA-000494 (Fla. Cir. Ct. Mar. 2, 2026). Accenture removed the case to federal court on the basis of fraudulent joinder. *Ballentine v. Meta Platforms, Inc. et al.*, 5:26-cv-00213 (M.D. Fla. 2026), Dkt. No. 1. After an amended complaint and two rounds of motions to dismiss, Ballentine voluntarily

[5] Ballentine also sued Meta, the National Center for Missing and Exploited Children (NCMEC), and NCMEC's corporate counsel in the Eastern District of Virginia based on two letters NCMEC's counsel sent to Ballentine in response to a notice of his intended subpoenas. *Ballentine v. Hall, et al.*, 1:26-cv-02331-RDA-IDD (E.D. Va. Aug. 6, 2026), Dkt. No. 5. Ballentine alleges that Meta conspired with NCMEC to get NCMEC to respond to Ballentine's subpoenas prematurely to intimidate him into dismissing his other lawsuits. *Id.* ¶¶ 234–51.

dismissed this Florida state-court action. *Id.*, Dkt. Nos. 20, 24, 32, 38, 39.

### III. Ballentine's Record of Delay and Non-Compliance Despite the District Court's Warnings.

At Ballentine's request, the district court transferred Ballentine's discrimination case, his removed state-court case, and this action to the same judge, Judge Anne-Leigh Gaylord Moe. In all three actions, the district court entered a docket entry cautioning the parties with the same warning that non-compliance with court orders and rules risked sanctions:

> For a just and efficient resolution of this case, the parties are DIRECTED to read and comply with the Middle District of Florida's Local Rules. See Local Rule 1.01(a). Failure to comply with ANY Local Rules or Court Orders may result in the imposition of sanctions including, but not limited to, the dismissal of this action or entry of default without further notice.

Dkt. No. 6; *Ballentine v. Meta Platforms, Inc. et al.*, 3:26-cv-05939, Dkt. No. 23; *Ballentine v. Meta Platforms, Inc. et al.*, 5:26-cv-00213, Dkt. No. 28. Despite these repeated warnings, Ballentine violated the court's orders repeatedly and otherwise caused delay.

***This action***. At the outset, Ballentine failed to allege that the district court had jurisdiction over the action pursuant to 28 U.S.C. § 1332 in his first two complaints. As a result, the district court *sua sponte* issued an order to show cause within 14 days as to "why the case should not be dismissed for failure to sufficiently allege diversity of citizenship to support federal subject matter jurisdiction." Dkt. No. 11 at 4. The order stated, "to properly allege the citizenship of Accenture and Kirkland, Mr. Ballentine must provide the Court with a list identifying the citizenship of each member of Accenture and Kirkland." *Id*. at 3. In response, Ballentine amended the complaint for the second time, removing Accenture and Kirkland as parties.

***The duplicative action***. Instead of proceeding against the other defendants, Ballentine filed a duplicative lawsuit in Florida state court, which the defendants had to remove to federal court for fraudulent joinder and move to dismiss twice before Ballentine agreed to withdraw the duplicative claims. From the outset, Ballentine failed to follow court rules and consistently delayed the resolution of his claims.

***The parallel discrimination case***. The same was true of Ballentine's parallel discrimination case also pending before Judge Moe.

For example, the court struck Ballentine's first opposition to Accenture's motion to dismiss because it exceeded the court's page limit by four pages. *See, e.g.*, *Ballentine v. Meta Platforms, Inc. et al.*, 3:26-cv-05939, Dkt. No. 56 ("the 40 Response … is hereby STRICKEN for a failure to comply with Local Rule 3.01(c)"); *see also* Local Rule 3.01(c) ("A party responding to a motion or brief may file a legal memorandum no longer than twenty pages."). Despite Ballentine's failure to follow the rules, the district court allowed him seven days to refile his opposition brief—but two days later, Ballentine again filed a noncompliant opposition brief exceeding the court's page limits. *Ballentine v. Meta Platforms, Inc. et al.*, 3:26-cv-05939, Dkt. No. 64. The district court again struck Ballentine's filing, again identified the local rule that Ballentine had violated, and again reminded Ballentine that "[f]ailure to comply with ANY Local Rules or Court Orders may result in the imposition of sanctions including, but not limited to, the dismissal of this action or entry of default without further notice." *Id.*, Dkt. No. 79.

Instead of filing a compliant opposition brief so the litigation could proceed, Ballentine filed an "urgent motion for recusal" and a "time-sensitive petition for reassignment" on the basis that "the Court struck

Plaintiff's timely oppositions to two dispositive motions … for 'failure to comply with Local Rule 3.01(c)' without identifying the deficiency." *Id.*, Dkt. No. 60 at 3; *Id.*, Dkt. No. 61 at 5–6. The district court denied both requests. *Id.*, Dkt. Nos. 65, 66.

Ballentine then further delayed by notifying various governmental entities and officials of the court's rulings and the allegedly unfair treatment of his case. *See id.*, Dkt. Nos. 69–78. After Ballentine filed the third-party notices on the docket, the magistrate judge struck the notices, explaining that, because "no relief [wa]s requested," there was "no basis to file such documents on the docket of this case." *Id.*, Dkt. No. 80. The magistrate judge also cautioned Ballentine that he should "refrain from filing such notices on the docket" in the future. *Id.*

Ballentine then petitioned this Court to intervene, filing three petitions complaining that his cases were being mishandled, in part because the district court struck his briefs for failure to comply with local rules. He also informed this Court that he had filed a complaint of judicial misconduct against Judge Moe and the magistrate judge, and asked for reassignment of his cases. *See In re: Marvelle Ballentine*, No. 26-11226 (11th Cir. 2026), Dkt. No. 2-2; *In re: Marvelle Ballentine*, No.

26-11228 (11th Cir. 2026), Dkt. No. 1-1; *In re: Marvelle Ballentine*, No. 26-11229 (11th Cir. 2026), Dkt. No. 1-2. Even then, Ballentine failed to comply with this Court's filing fee requirements, and the Court dismissed two of his petitions on that basis. *In re: Marvelle Ballentine*, No. 26-11228 (11th Cir. 2026), Dkt. No. 3; *In re: Marvelle Ballentine*, No. 26-11229 (11th Cir. 2026), Dkt. No. 4. The Court later denied the third petition because Ballentine presented no evidence of personal bias against him. *In re: Marvelle Ballentine*, No. 26-11226 (11th Cir. 2026), Dkt. No. 4-2 at 5.

In sum, in each case and at every turn, Ballentine has prolonged the litigation and failed to adhere to court rules.

## IV. The District Court Dismisses Ballentine's Claims Against Appellees with Prejudice

Before the district court ruled on Appellees' pending motions to dismiss or Ballentine's motion to withdraw parties and claims, the district court issued a Standing Order Regarding Use of Artificial Intelligence ("Standing Order"). Dkt. No. 70. The court issues the Standing Order in all pending cases, and its stated purpose is in part to protect "the Court's finite resources" so that it does not have to "consider a filing that is not supported by existing law." *Id.* at 2. "Unfortunately,

the use of artificial intelligence can easily lead to submission of filings without the required consideration of whether 'the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.'" *Id.* (quoting Fed. R. Civ. P. 11).

The Standing Order gave the parties ten days from the date of the order to either (1) "confirm compliance with Rule 11" by filing a certification for previous filings that either "artificial intelligence was not used" to prepare the filings, or "if artificial intelligence was used, every cited authority was personally reviewed by the filer ***in advance of the filing***"; or (2) withdraw the non-compliant filings with the option of requesting leave to refile. *Id.* at 6–7. All defendants filed the court-ordered certification for their past filings. Dkt. Nos. 72, 74.

Ballentine failed to make the certification within the ten-day period. Nor did he, as the Standing Order contemplates, withdraw his non-compliant filings. Instead, he filed a "time-sensitive motion for additional time to comply" with the Standing Order requesting an extension of 45 days to comply with the order, moving the deadline from June 5 to July 20. Dkt. No. 71 at 1. Ballentine explained that he needed

the extra time because he "determined that the volume of authorities cited across the filings subject to [the Standing Order] cannot responsibly be personally verified within the time provided." *Id.* at 2.

July 20th came and went, and Ballentine did not file his certification. Four days later, the district court granted Ballentine's motion for extension of time and dismissed the case with prejudice. Dkt. No. 80. The district court cited as the basis for dismissal Ballentine's failure to comply with the Standing Order:

> Although the time to review and confirm compliance with Rule 11 is and always has been prior to making the filing, the Court allowed Mr. Ballentine to take the additional time he requested anyway, even though he remained under an Order to file the certificate of compliance within the deadline in the [Dkt. No.] 70 Standing Order. Nevertheless, even with the benefit of the additional time he requested, Mr. Ballentine has not complied with the Standing Order and certified his compliance with Rule 11.

*Id.* In its order, the district court also highlighted that it had previously warned Ballentine that failure to comply with its orders and rules "may result in the imposition of sanctions including, but not limited to, the dismissal of this action." *Id.* (citing Dkt. No. 6).

Ballentine filed this appeal.

## SUMMARY OF ARGUMENT

The district court did not abuse its discretion in dismissing Ballentine's frivolous claims with prejudice. Ballentine has a long track record of flouting the district court's rules in multiple cases before the same judge. The precipitating failure happened to be his failure to comply with the district court's Standing Order—despite the district court's warning that dismissal could result from non-compliance. This followed months in which Ballentine had caused delays, wasted resources, and refused to defer to the district court's authority and abide by its rules and orders. A lesser sanction would not have served the interests of justice. Dismissal was not an abuse of discretion.

This Court may also affirm the district court's dismissal because Ballentine's claims fail as a matter of law. Ballentine admits in his complaint that his tort claims arise from statements that Accenture's attorneys made during the course of judicial proceedings in California. Under blackletter Florida law, such statements are protected by the litigation privilege, which affords attorneys "absolute immunity" for "any act occurring during the course of a judicial proceeding." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1274 (11th Cir. 2004). Ballentine's

complaint does not sufficiently allege that the statements in Accenture's motion to dismiss are false or defamatory, also defeating his conspiracy claim. Nor does Ballentine sufficiently allege that the attorney statements are "extreme and outrageous" under the "extremely high standard" for intentional infliction of emotional distress under Florida law. *Lopez v. Target Corp.*, 676 F.3d 1230, 1236–37 (11th Cir. 2012). The district court properly dismissed Ballentine's frivolous claims with prejudice.

## STANDARD OF REVIEW

This Court reviews a district court's dismissal for failure to comply with court orders for an abuse of discretion. *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006). "Discretion means the district court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Id.* When applying an abuse-of-discretion standard, this Court "must affirm unless [it] find[s] that the district court has made a clear error of judgment, or has applied the wrong legal standard." *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004).

This Court may also "affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below." *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017).

## ARGUMENT

After more than a year of litigation across multiple jurisdictions, including three cases in front of the district court, Ballentine has demonstrated a clear record of delay and willful contempt, culminating in his refusal to comply with the district court's Standing Order requiring certification of AI use compliant with Rule 11. The district court acted well within its discretion in dismissing Ballentine's claims with prejudice for his failure to comply with the court's order. Moreover, Ballentine's frivolous claims are plainly barred by Florida's litigation privilege and otherwise fail as a matter of law, providing alternative grounds to affirm.

### I. The District Court Did Not Abuse Its Discretion in Dismissing Ballentine's Claims for his Violation of a Court Order.

It is well established that a "district court need not tolerate defiance of reasonable orders." *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1241 (11th Cir. 2009). "While dismissal is an extraordinary remedy, dismissal upon disregard of an

order, especially where the litigant has been forewarned, generally is not an abuse of discretion." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). The rules are no different for *pro se* litigants: "If a *pro se* litigant ignores a [court] order, he is and should be subject to sanctions like any other litigant." *Id.* Here, despite the district court's repeated warnings that failure to comply with court orders could result in dismissal, Ballentine disregarded the district court's Standing Order and did not comply, even with the extra time allowed by the court. Given Ballentine's record of delaying litigation and disregarding court orders and rules, the district court did not abuse its discretion in dismissing Ballentine's case with prejudice as a sanction.

### A. Ballentine Failed to Comply with the Standing Order Despite the Court's Warnings.

There can be no dispute that Ballentine failed to comply with the Standing Order, despite the district court's repeated warnings that his non-compliance could result in sanctions. The Standing Order gave the parties two options: (1) make a certification that all filings were personally reviewed prior to filing and comply with Rule 11 obligations related to the use of AI; or (2) withdraw any non-compliant filings.

Ballentine neither made the certification nor withdrew his non-compliant filings. He thus violated the Order.

Contrary to Ballentine's assertion, the Order did not leave him room to do nothing. *See* Ballentine Br. at 13 (arguing the district court's dismissal was improper because the "operative words" in the court's standing order were "conditional," so the standing order was not an "unambiguous command"). Ballentine understood that he must take action to comply with the Standing Order: he requested an extension of time so that he could make the required certification. Dkt. No. 71. In any event, a district court's interpretation of its own order is "properly accorded deference on appeal," especially here where it is reasonable to read the Order as requiring Ballentine to have certified his compliance. *Cave v. Singletary*, 84 F.3d 1350, 1354–55 (11th Cir. 1996); *see also Matter of Chicago, Rock Island & Pac. R. Co.*, 865 F.2d 807, 810–11 (7th Cir. 1988) ("Few persons are in a better position to understand the meaning of a court order than the district judge who oversaw and approved it.").

Ballentine next mistakenly asserts that the Order allowed him to wait for the district court to rule on his extension motion before

complying. *See* Ballentine Br. at 24. Ballentine admits, as he must, that "the filing of an extension motion" did not "automatically suspend the original deadline." *Id.* A pending extension motion "does not relieve the movant of the responsibility to comply with an existing deadline" because were the rule otherwise "parties could routinely ignore established deadlines by filing motions for enlargement of time on or shortly before a deadline." *Ellison v. Windt*, 2001 WL 118617, at *2 (M.D. Fla. Jan. 24, 2001). As the district court explained, Ballentine "remained under an Order to file the certificate of compliance within the deadline" regardless of his pending extension motion, and "***even with*** the benefit of the additional time he requested," he still failed to comply with his desired deadline. Dkt. No. 80. Ballentine clearly failed to comply with the Standing Order.[6]

---

[6] Ballentine's argument that the district court's Standing Order is actually a local rule and therefore should have been subjected to public-comment requirements is erroneous. *See* Ballentine Br. at 16–22. Courts are plainly within their authority to create and enforce their orders as necessary to "ensure prompt disposition of legal actions." *Zocaras*, 465 F.3d at 490; *see also Curry v. Sec'y*, 665 F. App'x 766, 768 (11th Cir. 2016) (affirming dismissal of case for failure to comply with court order). In an era in which courts regularly confront briefs riddled with AI errors, it is particularly appropriate for the district court to issue the rule that it did. *See, e.g.*, *Parnell v. Fla. Dep't*

### B. Ballentine's Record of Delay and Failing to Comply with Court Rules and Orders Supports the District Court's Dismissal with Prejudice.

A district court has the authority to dismiss a complaint with prejudice for failing to comply with its orders. As this Court has explained, a district court may *sua sponte* dismiss pursuant to its inherent power "to enforce its orders and ensure prompt disposition of legal actions." *Zocaras*, 465 F.3d at 490; *see also Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986) ("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions."). Federal Rule of Civil Procedure 41(b) also expressly authorizes a court to dismiss a claim based on a plaintiff's failure to comply with court orders. *Zocaras*, 465 F.3d at 490 (citing Fed. R. Civ. P. 41(b)).

Under either source of authority, dismissal with prejudice is proper when there is (1) "a clear record of delay or willful contempt" and (2) "an implicit or explicit finding that lesser sanctions would not suffice."

---

*of Corr.*, 181 F.4th 1209, 1212 & n.2 (11th Cir. 2026) (granting motion for sanctions where counsel cited nonexistent authorities).

*Goforth*, 766 F.2d at 1535; *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999). Ballentine wrongly contends that the district court had to explicitly make these findings. Ballentine Br. at 12, 32–33. This Court has already concluded that the required findings need only be supported by the record and "implicit in the district court's decision to dismiss the case." *Moon*, 863 F.2d at 839 (affirming dismissal based on implicit findings); *see also Curry*, 665 F. App'x at 768 ("[A]lthough the district court did not explicitly find a clear record of delay or willfulness, or that lesser sanctions were inadequate, such findings can be made implicitly, and the record here supports such a finding."). Here, the record amply supports the district court's dismissal with prejudice.

First, there is a clear record of Ballentine's delay, as he has unnecessarily prolonged this litigation. To begin, Ballentine amended his complaints six times across the various actions, requiring defendants to repeatedly brief their arguments for dismissal. Dkt. Nos. 4, 20; *Ballentine v. Meta Platforms, Inc. et al.*, 3:25-cv-07671 (N.D. Cal. 2025), Dkt. No. 34; *see Ballentine v. Meta Platforms, Inc. et al.*, 3:26-cv-05939 (N.D. Cal. 2026), Dkt. Nos. 19, 151; *Ballentine v. Meta Platforms, Inc. et*

*al.*, 5:26-cv-00213 (M.D. Fla. 2026), Dkt. No. 32. Two separate times, Ballentine then voluntarily withdrew his claims only after the issues had been briefed, thereby evading resolution of his claims on the merits and causing months of delay. *Ballentine v. Meta Platforms, Inc.*, 3:25-cv-07671 (N.D. Cal. 2025), Dkt. No. 63; *Ballentine v. Meta Platforms, Inc. et al.*, 5:26-cv-00213 (M.D. Fla. 2026), Dkt. Nos. 38, 39. For example, Ballentine withdrew his California action and then filed in Florida, only to later agree to transfer the action back to California. *Ballentine v. Meta Platforms, Inc.*, 3:25-cv-07671 (N.D. Cal. 2025), Dkt. No. 63; *Ballentine v. Meta Platforms, Inc. et al.*, 3:26-cv-05939 (N.D. Cal. 2026), Dkt. Nos. 1, 108. In this action, Ballentine followed a similar playbook. He waited until all defendants—Meta, Keegan, and Anderson—had filed motions to dismiss, before moving to withdraw the claims against Meta and Keegan entirely. Dkt. Nos. 26, 44, 66. And, with respect to the Standing Order, Ballentine sought a forty-five-day extension, on top of the ten days provided, and he still did not comply with the Standing Order. Dkt. Nos. 71, 80. At every turn, Ballentine has delayed proceedings before the district court.

Ballentine's litigation conduct also demonstrates willful contempt for the district court's authority and the Standing Order, in particular. The district court previously struck one of Ballentine's filings ***twice*** for failure to comply with its page limits, even pointing Ballentine to the relevant local rule. *Ballentine v. Meta Platforms, Inc. et al.*, 3:26-cv-05939 (N.D. Cal. 2026), Dkt. Nos. 56, 57. Nevertheless, Ballentine never submitted a compliant filing. Instead of merely complying with the page limit, Ballentine filed a complaint of judicial misconduct and sought to recuse the district court judge who enforced the local rules. *See id.*, Dkt. No. 61 at 14, 23–24; *see also In re: Marvelle Ballentine*, No. 26-11226 (11th Cir. 2026), Dkt. No. 2-2 at 22. When those motions were denied, he transferred his claims to another jurisdiction. *Ballentine v. Meta Platforms, Inc. et al.*, 3:26-cv-05939 (N.D. Cal. 2026), Dkt. No. 108. Even with the Standing Order, Ballentine acknowledged the deadline for compliance, requested an extension, and then failed to comply with the deadline or even his requested extended deadline. Dkt. Nos. 71, 80. The record, therefore, supports "what is implicit in the district court's decision to dismiss this case"—that Ballentine was "repeatedly and stubbornly defiant." *Moon*, 863 F.2d at 839.

Second, Ballentine's record demonstrates that any lesser sanction than dismissal with prejudice "would not have served the interests of justice." *Goforth*, 766 F.2d at 1535. To start, a second extension of time would not have made a difference. The Standing Order gave Ballentine two options: file a certification or withdraw his non-compliant filings if he could not make the certification. Ballentine had already represented in his extension motion that he did not "personally verify" his previous filings ***before*** he filed them, so his only option was to withdraw his non-compliant filings, which he could have done at any time during the fifty-five days already provided by the court. His non-compliance therefore suggests a refusal to comply, and any further extension would not have served the interests of justice. *Gratton*, 178 F.3d at 1375 (affirming dismissal with prejudice when lesser sanctions were futile).[7]

Nor would a dismissal without prejudice have served the interests of justice, as the full context of Ballentine's conduct establishes. Given the months of delay, Ballentine's own motion to withdraw all but one

[7] Ballentine's argument that his "postjudgment certificate" verifying his Notice of Appeal somehow undermines the district court's dismissal also fails. Ballentine Br. at 25. This certificate makes no reference to the previous filings that were the subject of the Standing Order.

defamation claim, and the frivolous nature of Ballentine's claims apparent on the face of the complaint (*see infra* at Part II), the district court acted within its discretion, pursuant to its inherent authority to manage its docket, to dismiss Ballentine's complaint with prejudice. *See Keira v. United State*s, 400 F. App'x 477, 479 (11th Cir. 2010) ("Because the district court possesses the inherent power to police its docket and may dismiss a case with prejudice based on this power, the district court did not abuse its discretion in dismissing [*pro se* plaintiff's complaint] with prejudice as he failed to comply with the terms of the previous contempt order."); *Davis v. Kvalheim*, 261 F. App'x 231, 234 (11th Cir. 2008) ("[D]istrict courts have the inherent power to *sua sponte* dismiss frivolous suits without giving notice to the parties."); *Williamson v. TransUnion LLC*, 2026 WL 1210224, at *1 (11th Cir. May 4, 2026) ("The district court properly exercised its discretion by dismissing Williamson's *pro se* amended complaint with prejudice under its inherent power to manage its docket.").

Ballentine primarily contends that the Standing Order warned only that filings may "be stricken without prejudice." Ballentine Br. at 14. But he ignores the district court's inherent authority to dismiss with

prejudice and Federal Rule of Civil Procedure 41's explicit warning that an action may be dismissed with prejudice if "the plaintiff fails … to comply with these rules or a court order." The district court's dismissal here for Ballentine's non-compliance with its order also did not occur in isolation. Rather, the district court had repeatedly cautioned Ballentine that failure to comply with any court orders could result in sanctions, including dismissal with prejudice, even for *pro se* litigants. Dkt. No. 6; *Ballentine v. Meta Platforms, Inc. et al.*, 5:26-cv-00213 (M.D. Fla. 2026), Dkt. No. 28; *Ballentine v. Meta Platforms Inc., et al.*, 3:26-cv-05939 (N.D. Cal. 2026), Dkt. No. 23; *see also, e.g.*, *Williamson*, 2026 WL 1210224, at *1 (affirming dismissal with prejudice of *pro se* litigant's action based on the same general "warn[ing] that failure follow the Local Rules or court orders could result in sanctions" that Ballentine received here). The district court had "both the inherent power and the constitutional obligation to protect [its] jurisdiction from conduct which impairs [its] ability to carry out Article III functions," and nothing in the Standing Order undermined the district court's previous warnings or its authority to dismiss Ballentine's action with prejudice on this record. *Keira*, 400

F. App'x at 479. Given this record, the district court did not abuse its discretion.

## II. This Court May Alternatively Affirm Dismissal Because Ballentine Failed to State A Claim.

Remand would be "futile" here because "a more carefully drafted complaint could not state a claim." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1137-38 (11th Cir. 2019). Ballentine's tort claims arise from statements that are protected by the Florida litigation privilege, and therefore, his claims fail as a matter of law. In addition, Ballentine has not sufficiently pleaded (and cannot plead) the essential elements of those claims.

### A. Florida's Litigation Privilege Bars All of Ballentine's Claims.

As this Court has explained, "Florida's litigation privilege affords absolute immunity for acts occurring during the course of judicial proceedings." *Jackson*, 372 F.3d at 1274, 1277; *accord Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.*, 639 So. 2d 606, 607–08 (Fla. 1994). It exists so that "participants in a lawsuit are unhindered in exercising their judgment as to the best way to prosecute or defend the lawsuit," and it "applies to … state-law claims adjudicated in federal court." *Jackson*, 372 F.3d at

1274–75, 1277. Florida courts have "extended the litigation privilege to all torts." *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 383 (Fla. 2007). The litigation privilege is an affirmative defense that warrants dismissal at the pleading stage "when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar that action." *Jackson*, 372 F.3d at 1277.

The scope of this absolute privilege broadly encompasses all sorts of conduct during litigation. It protects an attorney's "statements made 'in connection with' or 'in the course of' an existing judicial proceeding …, even if they are not necessarily made in court or under oath." *Ross v. Blank*, 958 So. 2d 437, 441 (Fla. Dist. Ct. App. 2007). And it extends to email correspondence made during the course of litigation. *See Cherdak v. Cottone*, 2023 WL 2044608, at *5 (M.D. Fla. Feb. 16, 2023).

As is clear from the face of Ballentine's complaint, Florida's litigation privilege bars his claims, which are based on statements made in filings and by attorneys during the course of litigation. In its very first paragraph, Ballentine's complaint alleges that his tort claims arise from conduct that took place during Ballentine's California suit against Accenture and Meta. Dkt. No. 20 ¶ 1. His defamation and conspiracy-

to-defame claims arise solely from statements made in Accenture's motion to dismiss.[8] *Id.* ¶¶ 73–95. And Ballentine's emotional-distress claim is premised on those statements and other litigation-related correspondence between attorneys and Ballentine as a *pro se* plaintiff. *Id.* ¶¶ 96–106. Florida's litigation privilege plainly protects these attorney statements and correspondence. *See Ross*, 958 So. 2d at 441; *Cherdak*, 2023 WL 2044608, at *5 (extending litigation privilege to email correspondence from counsel to a *pro se* litigant and dismissing tort claims).

### B. Ballentine's Complaint Fails to State a Claim Because He Insufficiently Alleges Key Elements of Each Claim.

Notwithstanding Ballentine's motion to withdraw his claims for intentional infliction of emotional distress and conspiracy to defame,

---

[8] Ballentine's conspiracy-to-defame claim rises—or as here, falls—with his defamation claim: "if the defamation count fails, the other counts based on the same publication must fail as well because the same privileges and defenses apply." *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002); *see also Holston v. Dawson*, 2023 WL 7485227, at *8 (11th Cir. Nov. 13, 2023) ("Where the counts regarding the goals of the conspiracy fail, the conspiracy count must also fail.").

Ballentine's complaint fails to state any claim against any Appellee. This is an alternative ground to affirm the dismissal with prejudice.

#### 1. Ballentine Does Not Sufficiently Allege Defamation Against Anderson.

Ballentine's complaint does not sufficiently state a claim for defamation against Anderson. Ballentine alleges that Anderson, acting as counsel for Accenture in Ballentine's related California discrimination litigation, defamed him in Accenture's motion to dismiss. Ballentine had filed claims against Accenture and Meta, alleging that Meta terminated his Facebook account for discriminatory reasons, upon Accenture's recommendation. Accenture's motion to dismiss then argued that Ballentine's complaint failed to plead that, "but for" the discrimination, his account would not have been terminated. This statement made about a complaint in the context of a motion to dismiss is not false nor defamatory. Ballentine has thus failed to state a defamation claim.

To state a defamation claim, a plaintiff has to plausibly "allege that (1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff." *Valencia v. Citibank Int'l*, 728 So. 2d 330, 330 (Fla. Dist. Ct. App. 1999). The "*sine qua non* for recovery in a defamation action" is a

"false statement of fact." *Hallmark Builders, Inc. v. Gaylord Broad. Co.*, 733 F.2d 1461, 1464 (11th Cir. 1984). "Where the court finds that a communication could not possibly have a defamatory or harmful effect, the court is justified in dismissing the complaint for failure to state a cause of action." *Rubin v. U.S. News & World Rep., Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001).

Ballentine failed to allege his defamation claim because Accenture's motion to dismiss was not false or defamatory to Ballentine. The motion assumed—as all motions to dismiss must do—that the allegations in Ballentine's California complaint were true and then argued that they were deficient. Accenture's motion, therefore, pointed out that Ballentine's complaint did not sufficiently allege that his Facebook account complied with all of Meta's policies—in other words, that "but for" discrimination, his account would not have been terminated. Accenture stated: "An alternative explanation for Accenture's recommendation—a legitimate community standards violation by Ballentine—is consistent with ***the facts alleged in the complaint***." Dkt. No. 26 at 5; *Ballentine v. Meta Platforms Inc., et al.*, 3:25-cv-07671 (N.D. Cal. 2025), Dkt. No. 33 at 11. This is a true statement about the

allegations in the California complaint or, at most, an opinion about the public court filing that is "not actionable in a defamation suit." *Turner v. Wells*, 879 F.3d 1254, 1264 (11th Cir. 2018).

Nor does Ballentine allege how the statements in Accenture's motion to dismiss harmed him. The motion criticizes Ballentine's complaint; it does not pass judgment on Ballentine himself or his Facebook account. Neither the statements themselves nor the "gist" of the statements implies anything defamatory when considering the context of a motion to dismiss. *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1107 (Fla. 2008). Simply put, it is not defamatory for a motion to dismiss to recount the allegations in a complaint and argue that they do not sufficiently state a claim. These statements "could not possibly have a defamatory or harmful effect." *Rubin*, 271 F.3d at 1306.

### 2. Ballentine Does Not Sufficiently Allege Conspiracy Against Meta.

Although Ballentine has said he intends to drop Meta from this suit, the law also compels that result: The conspiracy count fails because Ballentine pleads no facts plausibly suggesting that Meta agreed with anyone to do *anything* unlawful—much less defame him.

Under Florida law, a civil conspiracy claim requires an agreement "to do an unlawful act or a lawful act by unlawful means." *Cohen v. McGuire*, 2016 WL 3188889, at *9 (M.D. Fla. June 8, 2016). But a plaintiff must do more than baldly assert that such an agreement existed—he must put forward facts that make the allegation plausible. *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy."); *Gaffney v. Rives*, 2023 WL 6049253, at *9 (M.D. Fla. Sep. 15, 2023) ("Conclusory allegations of an agreement, without any factual basis to make the allegations plausible, are insufficient to state a conspiracy claim."). The complaint comes nowhere close to alleging such facts.

On the contrary, the allegations involving Meta reflect nothing more than routine litigation coordination. Dkt. No. 20 ¶¶ 27–30, 45–46. According to the complaint, Accenture asked that Ballentine "include counsel for Meta on all communications … 'so the parties can be coordinated'"; Meta declined Ballentine's mediation invitation, deeming it unproductive, and Accenture followed suit; and Accenture proposed scheduling a single "court-ordered preservation meet-and-confer." *Id.*

¶¶ 27–30, 45–46. Those allegations reflect the mundane tasks of multi-party litigation, not a conspiracy to defame. If anything, the complaint affirmatively *defeats* the inference that Meta conspired to defame Ballentine: The complaint concedes that Meta's filing in the California Action did not contain any of the statements he challenges as (supposedly) defamatory. *Id.* ¶¶ 87–88.

The complaint's remaining bare assertions of a conspiracy are legally insufficient, as numerous cases from this circuit confirm. *See, e.g.*, *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1296 (11th Cir. 2010) (affirming dismissal of conspiracy claim under RICO where plaintiffs "merely offered conclusory allegations of agreement accompanied by statements of parallel behavior, which just as easily suggest independent, lawful action"); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1319 (S.D. Fla. 2014) (dismissing conspiracy claim because plaintiff did not "actually allege that [defendants] acted together but merely that they engaged in the same 'scheme'" because an "allegation of parallel conduct and a bare assertion of conspiracy will not suffice"); *see also Powell v. United States*, 800 F. App'x 687, 696 (11th Cir. 2020) (at summary judgment, affirming dismissal of conspiracy claim under § 1983

because there was no "evidence of an agreement with, meeting of the minds with, or other feedback … indicating that the [unlawful] actions … were in any way the result of a conspiracy"). The conspiracy claim against Meta should be dismissed with prejudice.

#### 3. Ballentine Does Not Sufficiently Allege Intentional Infliction of Emotional Distress.

Ballentine asserts that Anderson and Keegan caused him severe emotional distress. In particular, Ballentine argues that Anderson's statement in Accenture's motion to dismiss and Keegan's statements in email correspondence about the California litigation constituted intentional infliction of emotional distress. Neither Anderson's nor Keegan's conduct meets Florida's "extremely high standard" for intentional infliction of emotional distress. *Lopez*, 676 F.3d at 1237.

To state a claim, Ballentine had to allege "extreme and outrageous conduct" that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metro. Life Ins. Co. v. McCarson*, 467 So.2d 277, 278–79 (Fla. 1985). This standard is not met by "mere insults, indignities, threats or false accusations"—or even "vicious verbal attacks." *Williams v. Worldwide Flight SVCS., Inc.*,

877 So. 2d 869, 870 (Fla. 3d DCA 2004); *Lay v. Roux Lab'ys, Inc.*, 379 So. 2d 451, 452 (Fla. 1st DCA 1980). In fact, "Florida courts have been reluctant to find claims for intentional infliction of emotional distress based solely on allegations of verbal abuse." *Lopez*, 676 F.3d at 1236.

Ballentine's complaint comes nowhere near meeting the "extremely high" standard for this tort. Anderson's and Keegan's conduct was not outrageous—the statements at issue are commonplace litigation arguments and correspondence. Anderson argued on behalf of a client that Ballentine's complaint failed to make certain allegations to survive a motion to dismiss, and Keegan requested that Ballentine (as opposing counsel) continue to include a notice attorney on case communications. These statements look nothing like the extreme conduct that might meet the stringent standard for intentional infliction of emotional distress in Florida.[9]

* * *

As obvious from the face of his complaint, Ballentine's claims fail out of the gate. Florida's litigation privilege plainly bars Ballentine's tort

---

[9] Florida's single action rule independently bars Ballentine's claim against Anderson for intentional infliction of emotional distress because it is based on the same statements as the defamation claim.

claims, and, in any event, Ballentine has not stated (and cannot state) a claim for defamation, conspiracy to defame, or intentional infliction of emotional distress because the conduct at issue does not satisfy the elements of those claims. These pleading failures provide an alternative ground to affirm the district court's dismissal of this frivolous complaint with prejudice.

## CONCLUSION

The district court's judgment should be affirmed.

---

*See Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992) (holding that "if the sole basis of a complaint for emotional distress is a privileged defamatory statement, then no separate cause of action exists"); *Johns Hopkins All Children's Hosp., Inc. v. Kowalski*, 425 So. 3d 645, 665 (Fla. Dist. Ct. App. 2025) ("Where the conduct alleged to be outrageous is itself a pleaded tort, a claim of IIED cannot lie.").

Dated: October 2, 2026

/s/ Marianna C. Chapleau
MARIANNA C. CHAPLEAU
*Counsel of Record*
KIRKLAND & ELLIS LLP
830 Brickell Plaza
Miami, FL 33131
Telephone: +1 (305) 432-5687

*Counsel for Defendants-Appellees Devin S. Anderson & Christopher W. Keegan*

/s/ Nicholas González
NICHOLAS GONZÁLEZ
*Counsel of Record*
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Telephone: +1 (415) 773-5700

ERIC A. SHUMSKY
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Ave., NW
Washington, D.C. 20037
Telephone: +1 (202) 339-8400

*Counsel for Defendant-Appellee Meta Platforms, Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 8,079 words excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Local Rule 32-4.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: October 2, 2026

*/s/ Marianna C. Chapleau*
Marianna C. Chapleau

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on October 2, 2026.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/ Marianna C. Chapleau*
Marianna C. Chapleau