No. 26-12641-GG

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

MARVELLE J. BALLENTINE,

*Appellant*,

v.

DEVIN S. ANDERSON;
META PLATFORMS, INC.; and
CHRISTOPHER W. KEEGAN,

*Appellees*.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
CASE NO. 5:26-cv-00472-AGM-PRL

---

# DEFENDANTS-APPELLEES' SUPPLEMENTAL APPENDIX

---

MARIANNA C. CHAPLEAU
*Counsel of Record*
KIRKLAND & ELLIS LLP
830 Brickell Plaza
Miami, FL 33131
Telephone: +1 (305) 432-5687

*Counsel for Appellees Devin S. Anderson & Christopher W. Keegan*

ERIC A. SHUMSKY
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Ave., NW
Washington, D.C. 20037
Telephone: +1 (202) 339-8400

*Counsel for Appellee Meta Platforms, Inc.*

*(Additional counsel on next page)*

NICHOLAS GONZÁLEZ
*Counsel of Record*
ORRICK, HERRINGTON &
SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Telephone: +1 (415) 773-5700

*Counsel for Appellee Meta Platforms, Inc.*

# Index of Supplemental Appendix

**Docket/Tab#**

Order to Show Cause (Feb. 18, 2026) ........ 11

Endorsed Order Granting in Part Dkt. 15 Motion Under Fed. R. Civ. P. 21 to Drop Certain Defendants Without Prejudice (Feb. 25, 2026) ........ 18

Defendants Devin Anderson and Christopher Keegan's Motion to Dismiss All Claims Against Them (Mar. 18, 2026) ........ 26

Defendant Meta Platforms, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint (Apr. 3, 2026) ........ 44

Plaintiff's Time-Sensitive Motion to Drop Defendants Meta Platforms, Inc., And Christopher W. Keegan Under Rule 21 and for Leave to File a Narrowed Third Amended Complaint Under Rule 15(a)(2) (May 8, 2026) ........ 66

Defendants Devin S. Anderson and Christopher W. Keegan's Opposition to Plaintiff's Time-Sensitive Motion for Leave to File Third Amended Complaint (May 22, 2026) ........ 69

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on October 7, 2026.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: October 7, 2026

*/s/ Marianna C. Chapleau*
Marianna C. Chapleau
*Counsel for Defendants-Appellees Devin S. Anderson & Christopher W. Keegan*

# Docket No. 11

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MARVELLE J. BALLENTINE,**

**Plaintiff,**

**v.** **Case No. 6:26-cv-00286-AGM-DCI**

**ACCENTURE LLP; DEVIN S. ANDERSON; KIRKLAND & ELLIS LLP; META PLATFORMS, INC.; AND CHRISTOPHER W. KEEGAN**

**Defendants.**

---

## ORDER TO SHOW CAUSE

THIS CAUSE comes before the Court *sua sponte* on review of Plaintiff Marvelle Ballentine's Amended Complaint. (Doc. # 4.) On February 11, 2026, Mr. Ballentine filed the Amended Complaint against Defendants Accenture LLP ("Accenture"); Devin S. Anderson; Kirkland & Ellis, LLP ("Kirkland"); Meta Platforms, Inc.; and Christopher W. Keegan asserting defamation, civil conspiracy to defame, and intentional infliction of emotional distress claims arising out of a defamatory publication. (Doc. # 4.) Mr. Ballentine asserts subject matter jurisdiction based on diversity of citizenship.

Federal courts are courts of limited jurisdiction and therefore have an obligation to inquire into their subject matter jurisdiction. *See Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1279-80 (11th Cir. 2001). This obligation exists regardless of whether the parties have challenged the existence of subject matter jurisdiction. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("[I]t is well settled that a federal court is obligated to

inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking."). Mr. Ballentine has failed to properly allege the citizenship of Accenture and Kirkland. Therefore, the Court is unable to determine whether the diversity of citizenship requirement has been satisfied.

A district court has original jurisdiction over cases in which the parties are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Federal jurisdiction pursuant to 28 U.S.C. § 1332 exists only when there is complete diversity between the plaintiffs and the defendants and the amount in controversy requirement is met. *Owen Equip. & Recreation Co. v. Kroger*, 437 U.S. 365 (1978).

Mr. Ballentine asserts that there is complete diversity of citizenship. (Doc. # 4 at ¶ 7.) Mr. Ballentine, however, has not properly alleged the citizenship of Accenture or Kirkland, alleging only that:

> Defendant Accenture LLP ("Accenture") is a limited liability partnership whose partners are each citizens of States other than Florida; none is a citizen of Florida. Accordingly, Accenture LLP is not a citizen of Florida for purposes of diversity jurisdiction. ... Defendant Kirkland & Ellis LLP ("Kirkland") is a limited liability partnership whose partners are each citizens of States other than Florida; none is a citizen of Florida. Accordingly, Kirkland & Ellis LLP is not a citizen of Florida for purposes of diversity jurisdiction.

(*Id.* ¶¶ 11, 13.) Based on Mr. Ballentine's allegations, both Accenture and Kirkland are limited liability partnerships ("LLP").

It is insufficient to allege citizenship in the negative, i.e., that a party is not the citizen of a particular state. *See Cameron v. Hodges*, 127 U.S. 322, 324–25 (1888); *AFC Franchising, LLC v. Purugganan*, No. 20-13849-AA, 2021 WL 1541511, at *1 (11th Cir. Apr. 6, 2021); *Meyerson v. Showboat Marina Casino P'ship*, 312 F.3d 318, 320–21 (7th Cir. 2002). Additionally, it is well

established that an LLP is a citizen of any state of which a partner of that entity is a citizen. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1021–22 (11th Cir. 2004) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990)). Therefore, to properly allege the citizenship of Accenture and Kirkland, Mr. Ballentine must provide the Court with a list identifying the citizenship of each member of Accenture and Kirkland.[1] Failure to do so will require dismissal without prejudice of this action for lack of subject matter jurisdiction. *See Hedge Capital Inv. Ltd. v. Sustainable Growth Grp. Holdings LLC*, 593 F. App'x 937, 940 (11th Cir. 2014)[2] ("Complete diversity is an absolute requirement for a federal court to have jurisdiction under 28 U.S.C. § 1332.").

In light of the foregoing and "in the hope of preventing the needless expenditure of litigant and judicial resources that occurs when a case proceeds to trial in the absence of subject matter jurisdiction[,]" *see Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010), the Court will afford the party invoking jurisdiction an opportunity to submit sufficient information to establish this Court's diversity jurisdiction over the instant action.[3]

---

[1] Where a member of the party is also an unincorporated entity, its members must also be identified continuing on through however many layers of partners or members there may be. *See D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra*, 661 F.3d 124, 125–27 (1st Cir. 2011); *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1220 (11th Cir. 2017).

[2] Unpublished opinions of the Eleventh Circuit generally constitute persuasive, and not binding, authority. *See* 11th Cir. R. 36-2 and I.O.P. 6. This opinion, however, summarizes published case law describing the standard.

[3] Carefully ascertaining the citizenship of the parties and whether the Court has subject matter jurisdiction over this action is more than just an academic exercise, as is evident from two Eleventh Circuit decisions issued in 2017. *See Thermoset Corp. v. Bldg. Materials Corp of Am.*, 849 F.3d 1313, 1316-1317 (11th Cir. Mar. 2, 2017) (vacating summary judgment order after three years of litigation where court determined on appeal that the pleadings below had not sufficiently alleged the citizenship of a defendant limited liability company, and upon further inquiry, found that the defendant limited liability company had a non-diverse member); *see also Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1222, 1228 (11th Cir. Mar. 20, 2017) (discussing whether sanctions were warranted in a case where summary judgment was reversed on appeal after the appellate court discovered that the pleadings did not sufficiently allege the citizenship of the plaintiff

Accordingly, it is now

**ORDERED** and **ADJUDGED** that:

1. Plaintiff Marvelle Ballentine is **ORDERED** to show cause within 14 days why the case should not be dismissed for failure to sufficiently allege diversity of citizenship to support federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

**DONE** and **ORDERED** this 17th day of February 2026, in Chambers, in Orlando, Florida.

**ANNE-LEIGH GAYLORD MOE**
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

LLC, leading to the realization that there was no diversity jurisdiction) ("While the requirements of diversity jurisdiction in this scenario are complicated, they are the law. No party in this case acted with bad intentions, but the result was a colossal waste of time and effort. We trust that the damage done to the parties' credibility, finances, and time is enough of a sanction to curb their conduct and to serve as a warning to future diversity jurisdiction litigants. In the end, when the parties do not do their part, the burden falls on the courts to make sure parties satisfy the requirements of diversity jurisdiction. We must be vigilant in forcing parties to meet the unfortunate demands of diversity jurisdiction in the 21st century.").

# Docket No. 18

# *Ballentine v. Accenture LLP et al*

**Florida Middle District Court**

Case no. 5:26-cv-00472-AGM-PRL (M.D. Fla.)
Filed date: February 25, 2026
Docket entry no.: 18

Docket text:

| |
|---|
| ENDORSED ORDER granting in part 15 Motion Under Fed.R.Civ.P. 21 to Drop Certain Defendants Without Prejudice. The Motion is granted to the extent that, on or before 3/4/2026, Plaintiff is directed to file a Second Amended Complaint that identifies the Defendants in this case and the citizenship of all remaining parties. The Second Amended Complaint may not reference or incorporate any prior pleading, and must include all claims, allegations, and parties. This Order does not purport to discharge or rule upon the pending 11 Order to Show Cause. The Motion is denied without prejudice to the extent it requests further relief. Signed by Magistrate Judge Daniel C. Irick on 2/25/2026. (Irick, Daniel) (Entered: 02/25/2026) |

This PDF was generated on September 22, 2026 by PacerPro for a text-only docket entry synced on September 11, 2026.

https://app.pacerpro.com/cases/1082384389

# Docket No. 26

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| MARVELLE J. "JAY" BALLENTINE,<br><br>Plaintiff,<br><br>v.<br><br>DEVIN S. ANDERSON; META PLATFORMS, INC.; and CHRISTOPHER W. KEEGAN,<br><br>Defendants. | CASE NO. 6:26-CV-00286-AGM-DCI |

**DEFENDANTS DEVIN ANDERSON AND CHRISTOPHER KEEGAN'S**
**MOTION TO DISMISS ALL CLAIMS AGAINST THEM**

Defendants Devin Anderson and Christoper Keegan move to dismiss with prejudice all claims asserted in the Second Amended Complaint against them pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff does not state and cannot state a claim against them as a matter of law.

**INTRODUCTION**

Plaintiff Marvelle J. Ballentine ("Plaintiff"), proceeding *pro se*, is abusing the court system with baseless claims against attorneys for their advocacy on behalf of a client in court filings. Plaintiff's state-law tort claims are frivolous both because Florida's litigation privilege clearly protects the alleged litigation conduct, and because the allegations do not come close to satisfying Florida's high standards for the alleged

torts. The only purpose this lawsuit serves is to harass Defendants Devin Anderson ("Anderson") and Christopher Keegan ("Keegan") (and collectively, "Defendants"). The Court should not allow this abuse of process.

Plaintiff admits that the at-issue statements come entirely from a motion to dismiss that Defendants filed on behalf of their client Accenture LLP ("Accenture") in one of Plaintiff's lawsuits in California federal court and from emails with Plaintiff relating to that representation. There is no dispute that those statements were made exclusively as part of ongoing judicial proceedings in California. And there can be no dispute that those statements are protected by Florida's litigation privilege. It is both fundamental and well settled under Florida law that "litigation privilege affords absolute immunity for acts occurring during the course of judicial proceedings" precisely to "protect litigants and attorneys from liability for acts of defamation," like those alleged here. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1274 (11th Cir. 2004). This Court should dismiss the claims against Defendants with prejudice because Plaintiff will never be able to assert a claim against Defendants based on their representation of Accenture.

Moreover, Plaintiff's claims should be dismissed because they fail to state a claim as a matter of law. The alleged defamation is true speech made by attorneys about deficient allegations in a complaint. It is not defamation to state in a court filing that the complaint is missing certain allegations. It is not intentional infliction of emotional distress to ask a litigant to ensure that all counsel of record are copied on communications about a case. Indeed, Plaintiff's tactic of filing a baseless lawsuit

against Accenture's attorneys in order to make it more difficult for Accenture to defend itself against Plaintiff's discrimination claims reveals Plaintiff's true purpose of harassment. This Court should put a stop to these tactics and dismiss these claims with prejudice.

## BACKGROUND

### I. Plaintiff Sues Meta and Accenture in California for Discrimination.

Last fall, Plaintiff sued Accenture and Meta Platforms, Inc. ("Meta") in the U.S. District Court for the Northern District of California (the "California Complaint"). *See Ballentine v. Meta Platforms, Inc., et al.*, Case No. 3:25-cv-07671-CRB (N.D. Cal. Sept. 9, 2025) (the "California Lawsuit"); Second Am. Compl. ("SAC") ¶ 17.[1] Anderson and Keegan from the law firm, Kirkland & Ellis LLP ("Kirkland"), represented Accenture as legal counsel in the California Lawsuit, and Plaintiff was *pro se*. *Id.* ¶¶ 3, 11, 13, 23.

Plaintiff alleged in the California Complaint that Meta terminated his Facebook advertising account because its content violated Meta's community standards by displaying content categorized as Child Sexual Exploitation ("CSE") material. *Id.* ¶¶

---

[1] The Court may properly consider the complaint and motions to dismiss filed in the California Lawsuit, as well as the email communications with Anderson and Keegan described in the Second Amended Complaint, without converting this motion into a motion for summary judgment. "[T]he Eleventh Circuit has crafted a limited exception to the conversion rule when the attached documents are central to the claim being considered and are undisputed." *Braxton Techs., LLC v. Ernandes*, 2010 WL 11623673, at *3 (M.D. Fla. Apr. 22, 2010) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)). "A document is 'undisputed' when its authenticity is not challenged," and when it is "repeatedly referenced and [its] existence is a necessary part of [a party]'s case." *Id.* Here, these documents contain the statements Plaintiff alleges provide the bases for his claims, and Plaintiff repeatedly references them throughout the Second Amended Complaint. Accordingly, the Court may consider these exhibits in ruling on this motion to dismiss. *See id.*

20, 21; Ex. 1 (Cal. Compl.) ¶¶ 94–161. That was Plaintiff's allegation in his own complaint. Plaintiff went on to assert, however, that the real reason Meta terminated his account was, not because it violated any community standards, but instead "to eliminate Black business owners from Facebook's digital marketplace." Ex. 1 (Cal. Compl.) ¶ 1. The California Complaint also alleged that Accenture—a service provider that supports Meta's content-moderation efforts—assisted Meta in reviewing Plaintiff's account. *Id.* ¶¶ 7, 21. The California Complaint asserted four discrimination-related claims against Accenture and Meta. *See id.* ¶¶ 94–161.

## II. Accenture's Motion to Dismiss Argues That Plaintiff Failed to Account for Alternative Non-Discriminatory Reasons for Plaintiff's Termination.

Meta and Accenture filed separate motions to dismiss the California Complaint. In the section titled "Background," Accenture's motion to dismiss recounted the allegations in the California Complaint, including that, "[a]fter Accenture's review, Meta terminated Ballentine's account under its CSE policy." Ex. 2 (Oct. 16 Mot. to Dismiss) at 3. The motion also recited the legal standard for a dismissal motion pursuant to Federal Rule of Civil Procedure 12(b)(6): "Accenture accepts as true the factual allegations in the Complaint solely for the purposes of this motion to dismiss; Accenture does not otherwise concede the truth of any of those allegations." *See id.* at 2 n.2. The motion to dismiss then described the numerous bases warranting dismissal.

Of relevance here, the motion explained that each claim Plaintiff asserted against Accenture in the California Lawsuit required a showing of racial animus. *See id.* at 7. To make this showing, the California Complaint had to plausibly allege that,

"but for" racial discrimination, Plaintiff's account would not have been terminated. *See id.* at 10–11 (citing *Astre v. McQuaid,* 804 F. App'x 665, 667 (9th Cir. 2020) (affirming dismissal of a discrimination claim because the "allegations do not give rise to a plausible inference that [defendant's] alleged racially discriminatory actions caused the alleged impairment" given that "the 'complaint identifies independent non-discriminatory reasons for' the alleged impairment")). The California Complaint did not plausibly allege that racial animus was the cause of Plaintiff's account termination because the California Complaint was silent on whether there were alternative, non-discriminatory reasons for the account termination. The motion to dismiss stated: "An alternative explanation for Accenture's recommendation—a legitimate community standards violation by Ballentine—is consistent with the facts alleged in the complaint." Ex. 2 (Oct. 16 Mot. to Dismiss) at 11.

One day after Accenture filed its motion to dismiss, Plaintiff amended his complaint. A week later, Plaintiff emailed Anderson and Keegan to request that "Accenture consider including a footnote in its forthcoming motion [to dismiss the amended complaint] clarifying that it does not contend Plaintiff violated any child protection laws." Ex. 3 (Oct. 24, 2025 email from J. Ballentine). In response, Anderson explained that Accenture disagreed with Plaintiff's "characterization" of Accenture's first motion to dismiss: "We do not think that the motion suggested—explicitly or implicitly—that there was an actual violation of child protection laws." *See* Ex. 4 (Oct. 28, 2025 email from D. Anderson). Anderson conveyed, nonetheless,

that in "Accenture's forthcoming motion to dismiss, and as a courtesy, we will include language reinforcing this point." *Id.*

Accenture then filed its motion to dismiss the amended complaint, stating: "An alternative explanation for Accenture's recommendation—a legitimate violation of another community standard ***unrelated to CSE***—is consistent with the facts alleged in the complaint. Ex. 5 (Oct. 31 Mot. to Dismiss) at 10 (emphasis added).

## III. Plaintiff Abandons His California Lawsuit and Files a Series of Actions in Florida.

After Meta and Accenture fully briefed their motions to dismiss, and shortly before the California court was scheduled to hold argument on the motions, Plaintiff abandoned his California Lawsuit and refiled the exact discrimination claims initially raised in the California Complaint in this Court. *Ballentine v. Meta Platforms, Inc. et al.*, Case No. 6:26-cv-00376-AGM-RMN (M.D. Fla. Feb. 17, 2026).

Plaintiff separately filed the original complaint in this case on February 9, 2026, asserting defamation (libel), civil conspiracy to defame, and intentional infliction of emotional distress ("IIED") claims against Meta, Accenture, Kirkland, and Anderson as counsel for Accenture. Compl., Dkt. 1. Three days later, Plaintiff amended the complaint to add Keegan as a defendant and alleged IIED and civil conspiracy against Keegan. First Am. Compl., Dkt. 4. After being instructed by the Court to affirm that neither Accenture nor Kirkland had partners in Florida for jurisdictional purposes, Plaintiff amended the complaint a second time to remove Accenture and Kirkland as defendants on March 4, 2026. *See* SAC.

Two days earlier, Plaintiff also filed an "omnibus" complaint in Florida state court asserting both the original discrimination claims from the California Complaint and the tort claims against all defendants, including Kirkland and Accenture, in state court. *See Ballentine v. Meta Platforms, Inc., et al.*, No. 35-2026-CA-000494 (Fla. Cir. Ct. Mar 2, 2026).

To date, Plaintiff has filed identical discrimination claims against Meta and Accenture in California federal court, Florida federal court, and Florida state court. Likewise, Plaintiff asserts the same tort claims against Anderson and Keegan in both Florida federal court and Florida state court.

**IV. Plaintiff Asserts Tort Claims Against Accenture's Attorneys.**

The operative Second Amended Complaint asserts three claims against Defendants: (1) defamation (libel), (2) civil conspiracy to defame, and (3) IIED. SAC ¶¶ 73–106. Plaintiff seeks compensatory damages in the amount of $100 million and costs. *Id.* at 22.

The allegations in this lawsuit are frivolous on their face. Plaintiff alleges that Anderson defamed him in two different ways through Accenture's motion to dismiss filed in the California Lawsuit. First, Plaintiff alleges that the motion to dismiss stated in part that "'a legitimate community standards violation by Ballentine—is consistent with the facts,'" which "conveyed to readers that Plaintiff engaged in a CSE violation or a child-protection-law violation warranting enforcement action." *Id.* ¶¶ 76–77. Second, Plaintiff alleges that the motion to dismiss "identified Plaintiff by name" and used the phrase "Child Sexual Exploitation" or "CSE" twenty-six times in the motion,

and Plaintiff's name "appeared in the same sentence as CSE-related terminology nine times," which was "defamatory by implication in that it conveyed to readers that Plaintiff engaged in a CSE violation or child-protection-law violation warranting enforcement action." *Id.* ¶¶ 17, 31, 56, 58, 75–77. Tellingly, Plaintiff admits throughout the Second Amended Complaint that the "publication" of the alleged defamatory statements occurred "in litigation." *Id.* ¶¶ 1, 3–4, 31–36, 50–51.

Plaintiff also asserts a claim for IIED based on these same allegedly defamatory statements and based on actions taken by Keegan as counsel for Accenture. *Id.* ¶¶ 97–106. Specifically, Plaintiff complains of two emails between Keegan and Plaintiff regarding the California Lawsuit. *Id.* ¶¶ 67, 69, 102. In the first email, Keegan informed Plaintiff that Anderson should be included in email communications regarding Accenture's defense of the California Lawsuit after Plaintiff did not include Anderson on case correspondence:

> On Tuesday, February 10th, 2026 at 11:28 AM, Keegan, Christopher <chris.keegan@kirkland.com> wrote:
>
> Mr. Ballentine, Mr. Anderson continues to represent Accenture in these proceedings and you should continue to direct all communications to both Mr. Anderson and myself on behalf of Accenture. I have added him to this discussion.
>
> Chris
>
> Christopher W. Keegan, P.C.
>
> KIRKLAND & ELLIS LLP
> 555 California Street, San Francisco, CA 94104
> T +1 415 439 1882 M +1 415 238 6821
> F +1 415 439 1500
>
> chris.keegan@kirkland.com

Plaintiff responded by removing Anderson from the email chain and stating that he did not want to include Anderson because he is "a co-defendant" in this action:

**From:** Jay Ballentine <jayballentine@protonmail.com>
**Sent:** Tuesday, February 10, 2026 11:16 AM
**To:** Keegan, Christopher <chris.keegan@kirkland.com>
**Cc:** Visser, Michelle <mvisser@orrick.com>; Davis, Sarah <sdavis@orrick.com>
**Subject:** RE: Ballentine v. Meta Platforms, Inc. et al., No. 3:25-cv-07671-CRB – Proposed Stipulation to Continue Rule 12 Hearing

Mr. Keegan,

Thank you for your note. As a procedural matter, I do not intend to maintain direct communications with any named defendant in the Florida action.

The current representation structure, where Kirkland & Ellis LLP is a named defendant, Mr. Anderson is both a partner and a co-defendant, and both continue to represent co-defendant Accenture LLP, raises difficult boundary questions. At present, I will maintain communications with you alone in your capacity as counsel for Accenture, and reserve all procedural rights as this posture develops.

Best regards,

Marvelle J. "Jay" Ballentine

Plaintiff, pro se

Keegan responded by asking that Anderson be included on communications about the California Lawsuit because Anderson was a notice attorney for Accenture:

On Tuesday, February 10th, 2026 at 12:17 PM, Keegan, Christopher <chris.keegan@kirkland.com> wrote:

Mr. Ballentine –

Notice attorneys include Mr. Anderson and myself, so please continue to include him on communications.

Chris

**Christopher W. Keegan, P.C.**

**KIRKLAND & ELLIS LLP**
555 California Street, San Francisco, CA 94104
T +1 415 439 1882 M +1 415 238 6821
F +1 415 439 1500

chris.keegan@kirkland.com

Keegan had no other communications directly with Plaintiff. Based on these two emails, Plaintiff asserts that "Keegan engaged in intentional or reckless conduct" and "caused Plaintiff severe emotional distress." *Id.* ¶¶ 102–03.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). If the allegations are more conclusory than factual, the court need not assume their truth. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). Courts will dismiss a complaint where a plaintiff provides only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. A plaintiff must make factual allegations that "raise a right to relief above the speculative level," *id.*, and cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. Although "[p]leadings from pro se litigants are held to a less stringent standard than pleadings drafted by attorneys," such pleadings still must meet the minimum pleading standards. *Thomas v. Hillsborough Cnty. Sheriff's Off.*, 2021 WL 3930511, at *2 (M.D. Fla. Sept. 2, 2021) (citing *Pugh v. Farmers Home Admin.*, 846 F. Supp. 60, 61 (M.D. Fla. 1994)).

## ARGUMENT

### I. The Litigation Privilege Bars Plaintiff's Claims.

Plaintiff's claims should be dismissed because they arise from statements that are protected by Florida's litigation privilege. When "the conduct in question is

inherently related to, and occurs during an ongoing judicial proceeding, under Florida law, that conduct must be protected so that participants in a lawsuit are unhindered in exercising their judgment as to the best way to prosecute or defend the lawsuit." *Jackson*, 372 F.3d at 1277. "The litigation privilege in Florida provides all persons involved in judicial proceedings, including parties and counsel, an absolute privilege from civil liability for acts taken in relation to those proceedings." *Cherdak v. Cottone*, 2023 WL 2044608, at *4 (M.D. Fla. Feb. 16, 2023) (citation omitted). Litigation privilege is an affirmative defense that "may be considered in resolving a motion to dismiss when 'the complaint affirmatively and clearly shows the conclusive applicability' of the defense to bar the action." *Jackson*, 372 F.3d at 1277 (quoting *Reisman v. Gen. Motors Corp.*, 845 F.2d 289, 291 (11th Cir. 1988)). Here, the Second Amended Complaint affirmatively and clearly shows that (1) the conduct at issue is protected by the litigation privilege, and (2) the litigation privilege applies to the claims asserted by Plaintiff.

### A. The Litigation Privilege Extends to Statements Made in Court Filings and Related Correspondence with Attorneys.

The face of the Second Amended Complaint clearly shows that Plaintiff's claims arise from statements related to the California Lawsuit. Under Florida law, "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . ***so long as the act has some relation to the proceeding***" because "participants in litigation must be free to engage in unhindered communication" and

"to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct." *Jackson*, 372 F.3d at 1274 (emphasis added) (quoting *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.,* 639 So.2d 606, 608 (Fla. 1994)).

Here, Plaintiff complains of two types of statements made by Defendants. First, Plaintiff himself admits that the Second Amended Complaint "arises from … statements published … in federal court filings." SAC ¶ 1 (emphasis added). Specifically, Plaintiff alleges that Defendants made defamatory statements in Accenture's motion to dismiss when they argued that the California Complaint did not state a claim for racial discrimination. Because these statements were made in a pleading filed with the court in the California Lawsuit, they clearly fall within the litigation privilege. *See e.g., Emergency Recovery, Inc. v. Gov't Emps. Ins. Co.*, 773 F. Supp. 3d 1304, 1313 (M.D. Fla. 2025) (determining that Florida's litigation privilege applies when the "defamatory statements at issue were made either in front of a judicial officer or in pleadings or documents filed with the court").

Likewise, to the extent Plaintiff's claims arise from the statements Keegan made (as counsel to Accenture) in email correspondence to Plaintiff (as the *pro se* plaintiff in the California Lawsuit), Florida's litigation privilege bars those claims, too, because they directly related to the California Lawsuit, discussing Accenture's representation by counsel (*i.e.*, "notice attorneys") in those judicial proceedings. *See Cherdak*, 2023 WL 2044608, at *5 (finding that email correspondence from counsel to a *pro se* litigant "clearly trigger[ed] the litigation privilege"); *Jackson*, 372 F.3d at 1276 ("[E]vents

taking place outside the courtroom during discovery or settlement discussions are no less an integral part of the judicial process, and thus deserving of the protection of the [litigation] privilege, than in-court proceedings."). There can be no doubt that the litigation privilege extends to the statements at issue here.

**B. The Litigation Privilege Applies to All Tort Claims Asserted.**

The litigation privilege also clearly applies to all of the tort claims Plaintiff asserts here. Generally, courts have applied the privilege "to any tort or statutory cause of action based on false statements or other wrongful conduct." *Emergency Recovery, Inc.*, 773 F. Supp. 3d at 1312 (quoting *AGM Invs., LLC v. Bus. L. Grp., P.A.*, 219 So. 3d 920, 924 (Fla. 2d DCA 2017)). As relevant to Plaintiff's claims, alleged defamatory statements made in court filings are "categorically immune from liability under the litigation privilege doctrine." *United States v. Madison*, 2025 WL 3623726, at *10 (M.D. Fla. Dec. 15, 2025). Courts have also applied the privilege to bar claims of IIED. *See, e.g.*, *Cherdak*, 2023 WL 2044608, at *6 ("Litigation privilege immunizes acts done (or statements made) in connection with litigation from tort suits. Accordingly, this privilege extends beyond defamation claims to other tort claims, including intentional infliction of emotional distress."); *Medina Wright Berry Medina Wright v. Medina*, 2013 WL 12156046, at *7 (M.D. Fla. July 12, 2013) (dismissing claim for IIED on the basis that "the assertion of intentional infliction of emotional distress cannot be used to circumvent the immunity afforded to litigation conduct"); *see also Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So.2d 380, 384 (Fla. 2007) ("The litigation privilege applies across the board to actions in Florida, both to common-law causes of

action, those initiated pursuant to a statute, or of some other origin.").

Finally, Plaintiff's civil conspiracy claim fails because Plaintiff's defamation claim fails. "Florida law does not recognize an independent cause of action for civil conspiracy; rather, a valid claim must allege an underlying illegal act or tort on which the conspiracy is based." *Cherdak*, 2023 WL 2044608, at *7 (citing *Merchant One, Inc. v. TLO, Inc.*, 2020 WL 248608, at *8 (S.D. Fla. Jan. 16, 2020)). Because Plaintiff asserts that the underlying tort for his civil conspiracy claim is defamation, Plaintiff's civil conspiracy claim should be dismissed as well. *See Rothenberg v. Knight Swift Transp.*, 2023 WL 3511271, at *5 (M.D. Fla. Feb. 7, 2023) ("[A] claim that is found not to be actionable cannot serve as the basis for a conspiracy claim."); *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.,* 831 So. 2d 204, 208 (Fla. 4th DCA 2002) ("[I]f the defamation count fails, the other counts based on the same publication must fail as well because the same privileges and defenses apply.").

The litigation privilege thus disposes of all of Plaintiff's claims against Defendants, and they should be dismissed with prejudice as a result.

## II. Independently, the Court should Dismiss the Claims Against Defendants for Failure to State a Claim.

### A. Plaintiff Does Not Allege Defamation.

In addition to being protected by the litigation privilege, Defendants' statements are not false and not defamatory. "To state a claim of defamation, the plaintiff must allege that (1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff."

*Grayson v. No Labels, Inc.*, 599 F. Supp. 3d 1184, 1188 (M.D. Fla. 2022) (citation omitted). "A false statement of fact is the *sine qua non* for recovery in a defamation action." *Hallmark Builders, Inc. v. Gaylord Broad. Co.*, 733 F.2d 1461, 1464 (11th Cir. 1984) (citation omitted). "Where the court finds that 'a communication could not possibly have a defamatory or harmful effect, the court is justified in dismissing the complaint for failure to state a cause of action.'" *Rubin v. U.S. News & World Rep., Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001) (footnote omitted).

Plaintiff fails to identify a statement that is false or defamatory. Plaintiff alleges that Defendants defamed him by stating in a court filing that "[a]n alternative explanation for Accenture's recommendation [to terminate Ballentine's account]—a legitimate community standards violation by Ballentine—is consistent with the facts ***alleged in the complaint***." Ex. 2 (Oct. 16 Mot. to Dismiss) at 11 (emphasis added); SAC ¶ 76. Plaintiff omits the key phrase "alleged in the complaint" in his allegations in the Second Amended Complaint, but those are the operative words. Accenture's motion to dismiss assessed—as all motions to dismiss must do—the allegations that Plaintiff set forth in his California Complaint and then argued that ***the California Complaint never alleged*** that Ballentine did not commit a community standards violation. That is a completely normal argument in a motion to dismiss and is a true statement or, at most, an opinion about the public California Complaint that is "not actionable in a defamation suit." *Turner v. Wells*, 879 F.3d 1254, 1262–64 (11th Cir. 2018) ("Under Florida law, a defendant publishes a 'pure opinion' when the defendant makes a

comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public." (citation omitted)). Importantly, the Second Amended Complaint never alleges that this statement in Accenture's motion to dismiss is false.

In addition, the motion's characterization of the California Complaint is not defamatory or harmful to Plaintiff. The alleged defamatory statements describe what the California Complaint said (or did not say)—not what Plaintiff actually did with respect to his Facebook advertising account. There is no reasonable defamatory interpretation of these statements in the context of a motion to dismiss filed as part of judicial proceedings to dismiss a complaint as a matter of law. *See Hallmark Builders*, 733 F.2d at 1464 (dismissing defamation claims after finding that the alleged defamatory statements are "not susceptible to a defamatory interpretation").

Plaintiff also tries to make a defamation by implication claim, asserting that all the references in the motion to dismiss to "CSE" and CSE-related terminology in proximity to his name "conveyed to readers that Plaintiff engaged in a CSE violation or child-protection-law violation warranting enforcement action." SAC ¶ 77. Whether a statement is defamatory by implication "turns on whether the 'gist' of the publication is false." *Turner*, 879 F.3d at 1269 (citation omitted). "In making this determination, [the factfinder] should consider the context in which the statement is made." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1107 (Fla. 2008).

The context of the motion to dismiss makes crystal clear that it is responding to the allegations that Plaintiff himself made in the California Complaint. Indeed,

Plaintiff himself referenced CSE and CSE-related terminology ***more than seventy times*** in his own California Complaint. *See generally* Ex. 1 (Cal. Compl.). It is not defamatory—whether by implication or otherwise—for a motion to dismiss a complaint that mentions Plaintiff and CSE more than seventy times to also reference Plaintiff and CSE in the course of arguing that the California Complaint did not sufficiently state a claim for racial discrimination. It is ridiculous for Plaintiff to claim otherwise. These statements "could not possibly have a defamatory or harmful effect." *Rubin*, 271 F.3d at 1306.

Because Plaintiff has not sufficiently alleged that the statements in Accenture's motion to dismiss were false and defamatory, the Court should dismiss Plaintiff's defamation claim.

### B. Plaintiff's Civil Conspiracy Claim Falls with His Defamation Claim.

As discussed above *supra* Part I.B., Plaintiff's claim that Defendants and Meta conspired to defame him fails because the underlying defamation claim fails. *See Button v. McCawley*, 2025 WL 50431, at *11 (S.D. Fla. Jan. 8, 2025) (determining that if "the count regarding the goal of the 'conspiracy' (defamation) fails, the conspiracy count fails too"); *Rothenberg*, 2023 WL 3511271, at *5 ("[A] claim that is found not to be actionable cannot serve as the basis for a conspiracy claim.").

### C. Plaintiff Does Not Sufficiently Allege Intentional Infliction of Emotional Distress.

Plaintiff's claim for IIED should also be dismissed because he does not sufficiently allege that Defendants engaged in "extreme and outrageous conduct," an

essential element of a claim for IIED. *Lopez v. Target Corp.*, 676 F.3d 1230, 1236 (11th Cir. 2012). Under Florida law, "[c]onduct is considered 'outrageous' when it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Martinez v. Pavex Corp.*, 422 F. Supp. 2d 1284, 1296 (M.D. Fla. 2006) (quoting *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 278–79 (Fla. 1985)). Therefore, liability for IIED "does not extend to mere insults, indignities, threats or false accusations"—not even to "viscous verbal attacks." *Williams v. Worldwide Flight SVCS., Inc.*, 877 So. 2d 869, 870 (Fla. 3d DCA 2004) (holding that conduct was not outrageous even though plaintiff was called racially derogatory terms at the workplace, was made to work in dangerous conditions, and was subject to false disciplinary actions and threats that he would be fired); *Lay v. Roux Lab'ys, Inc.*, 379 So. 2d 451, 452 (Fla. 1st DCA 1980) (holding that conduct was not outrageous even though plaintiff was subject to "humiliating language, vicious verbal attacks, [and] racial epithets"). In fact, Florida courts have generally been "reluctant to find claims for [IIED] based solely on allegations of verbal abuse," given "the extremely high standard" imposed by Florida law. *Lopez*, 676 F.3d at 1236–37 (quotation omitted). Nothing alleged in the Second Amended Complaint comes remotely close to meeting this standard.

At the outset, to the extent Plaintiff accuses Defendants of IIED based on the statements made in Accenture's motion to dismiss the California Complaint, such claim is barred by Florida's single action rule. *See Cherdak*, 2023 WL 2044608, at *6

("[E]ven in the absence of litigation privilege, [plaintiff's] intentional infliction of emotional distress claim would still be improper because it is merely a restatement of his defamation claim."); *Patterson v. Meredith Corp.*, 2018 WL 11649577, at *2 (M.D. Fla. Nov. 9, 2018) ("[I]t is clear that the IIED claims cannot continue because they are based on the same alleged defamation, thus running afoul of Florida's single action rule."). On this basis, the claims for IIED arising from the statements made in the motion to dismiss fail entirely.

Plaintiff's assertion that Keegan's emails constitute "extreme and outrageous" conduct also fails. Plaintiff alleges that Keegan's actions boil down to "twice adding Anderson to email communications with Plaintiff after Plaintiff had removed Anderson from the chain … with knowledge that Anderson is alleged to have caused Plaintiff severe emotional distress." SAC ¶¶ 102–03. Those allegations of normal litigation practice to maintain communication between counsel of record and a *pro se* Plaintiff do not rise to the level of a well-pleaded IIED claim. Plaintiff does not allege verbal abuse, let alone verbal abuse combined with physical abuse. Rather, the benign actions Keegan took were standard communications made between attorneys and a *pro se* attorney during the course of pending litigation proceedings—and "did not involve any obscenities, racial epithets, or threats of violence." *Id.* at 1237. Keegan's alleged conduct cannot be characterized as "extreme" or "outrageous," and it certainly is not sufficiently extreme and outrageous to "meet the extremely high standard erected by Florida's courts." *Id.*; *see also Martinez*, 422 F. Supp. 2d at 1296–97 (dismissing a claim for IIED even though employees of the defendant company

"repeatedly used racial slurs and delayed and inconvenienced [plaintiffs] while they delivered materials to the [defendant company]"). At bottom, the Second Amended Complaint fails to state a claim for IIED against Defendants.

## III. The Claims Against Defendants Should Be Dismissed with Prejudice.

This Court should deny Plaintiff leave to amend because it would be futile. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1213 (11th Cir. 2001) ("'[I]f a more carefully drafted complaint could not state a claim …, dismissal with prejudice is proper.'"). Because Florida's litigation privilege applies to all of Defendants' statements, Plaintiff "could not state a viable claim even if given an opportunity to file an amended complaint." *Cherdak*, 2023 WL 2044608, at *8; *see also Arthur-Rodger v. N. Tr. Co.*, 2025 WL 3620274, at *5 (M.D. Fla. Jan. 28, 2025) (dismissing complaint with prejudice because "[t]he litigation privilege covers other tortious behavior, including actions of the parties, beyond defamatory statements").

Furthermore, given Plaintiff's history of asserting frivolous claims against Defendants as well as against Defendants' client and law firm, dismissal with prejudice is particularly warranted here. *Brett v. Biden*, 2022 WL 5213317, at *2 (N.D. Fla. Sept. 1, 2022) ("Plaintiff's long and extensive history of asserting frivolous claims further indicates that Plaintiff is asserting frivolous claims in this civil action and that the appropriate action is dismissal with prejudice."), *report and recommendation adopted*, 2022 WL 5213029 (N.D. Fla. Oct. 5, 2022). Claims are considered frivolous if they are "without arguable merit either in law or fact." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001). Plaintiff's claims, which attack the very legal advocacy upon which

this Court relies, are the definition of frivolous. The Court should therefore dismiss the claims against Defendants with prejudice. *See Raghubir v. United States*, 2021 WL 12163926, at *2 (M.D. Fla. Oct. 20, 2021) ("The frivolous complaint and Plaintiff's numerous previous filings warrant dismissing the complaint with prejudice."), *report and recommendation adopted*, 2021 WL 12163948 (M.D. Fla. Dec. 6, 2021); *Jean-Baptiste v. United States Dep't of Just.*, 2024 WL 172753, at *2 (S.D. Fla. Jan. 3, 2024) ("Based upon Plaintiff's fantastical allegations in this Action and his pattern of frivolity in other cases, the Court dismisses this Action with prejudice."), *aff'd*, 2024 WL 4249655 (11th Cir. Sept. 20, 2024).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the claims against Defendants with prejudice.

Dated: March 18, 2026

Respectfully submitted,

By: */s/ Marianna Chapleau*

Marianna C. Chapleau (FBN. 1059142)
Ariel D. Deitchman (FBN. 118163)
Patrick Malone (FBN. 1051725)
KIRKLAND & ELLIS LLP
Three Brickell City Centre
98 S.E. 7th St., Suite 700
Miami, FL 33131
Tel: (305) 432-5600
Fax: (305) 432-5601
mchapleau@kirkland.com
ariel.deitchman@kirkland.com
patrick.malone@kirkland.com

Lauren M. Spiwak (*pro hac vice forthcoming*)
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
Tel: (214) 432-5042
Fax: (214) 972-1771
lauren.spiwak@kirkland.com

*Counsel for Defendants Devin S. Anderson and Christopher W. Keegan.*

**LOCAL RULE 3.01(g) CERTIFICATION**

Pursuant to Local Rule 3.01(g), counsel for Defendants Devin S. Anderson and Christopher W. Keegan certifies that counsel conferred with Plaintiff via email, and Plaintiff opposes the relief requested in this motion.

*/s/ Marianna Chapleau*
Marianna Chapleau

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2026, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will serve Notice of Filing on all counsel of record.

*/s/ Marianna Chapleau*
Marianna Chapleau

# Docket No. 44

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| MARVELLE J. "JAY" BALLENTINE<br><br>Plaintiff,<br><br>v.<br><br>DEVIN S. ANDERSON; META PLATFORMS, INC., and CHRISTOPHER W. KEEGAN<br><br>Defendants. | Case No 6:26-cv-286 |

# <u>DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT</u>

Defendant Meta Platforms, Inc. ("Meta") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff Marvelle Ballentine's Second Amended Complaint ("SAC") under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

## I. INTRODUCTION

The instant lawsuit is predicated solely on statements made by Accenture LLP ("Accenture"), through its counsel, in Accenture's motion to dismiss a separate lawsuit that Plaintiff brought against Meta and Accenture in the United States District Court for the Northern District of California.

Plaintiff's claims against Meta fail at the outset because this Court does not have personal jurisdiction over Meta. As Plaintiff acknowledges, Meta is a Delaware corporation with its principal place of business in California. As such, there is no general jurisdiction over Meta. And Plaintiff does not allege that Meta engaged in any suit-related conduct in or directed to Florida, so this Court also lacks specific jurisdiction over Meta.

Plaintiff's sole cause of action against Meta—conspiracy to defame—also fails on the merits. Plaintiff's claim is based solely on statements made in Accenture's motion to dismiss the action Plaintiff filed in California. But the SAC is devoid of any allegations suggesting that Meta reached an agreement with Accenture or its lawyers regarding the content of Accenture's motion. To the contrary, the SAC acknowledges that Meta *did not* make the argument

Accenture made that is the subject of the present action. Moreover, any conspiracy claim against Meta necessarily fails because Plaintiff's defamation claim against Accenture's counsel is barred by Florida's litigation privilege, which provides "absolute immunity … [for] any act occurring during the course of a judicial proceeding, regardless of whether the act involved a defamatory statement … so long as the act has some relation to the [judicial] proceeding." *Cherdak v. Cottone*, No. 2:22-cv-634-SPC-NPM, 2023 WL 2044608, at *4 (M.D. Fla. Feb. 16, 2023) (quoting *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994)). Accordingly, Plaintiff's deficient conspiracy claim could not be cured with amendment.

## II. BACKGROUND

**The California Action.** Plaintiff's claims in his SAC are premised on a motion to dismiss filed by Accenture in a separate case brought by Plaintiff against Meta and Accenture in the United States District Court for the Northern District of California. SAC ¶¶ 1, 17. That action, captioned *Ballentine v. Meta Platforms, Inc. et al.*, No. 3:25-cv-7671 (the "California Action"), arose out of Meta's policy against "Child Sexual Exploitation" ("CSE"), whereby Meta prohibits content that exploits or endangers children. Plaintiff sued Meta and Accenture because Meta allegedly disabled Plaintiff's Facebook account pursuant to Meta's CSE policy, and Accenture allegedly

affirmed that decision. SAC ¶¶ 20-21. Based solely on his allegations that Accenture was aware that Plaintiff was Black when it upheld the disablement and that, in a handful of other CSE enforcement cases (out of millions), Accenture allegedly reversed the initial determinations for white users, Plaintiff claimed that Meta and Accenture disabled his account based on his race and asserted claims against both Meta and Accenture for alleged violations of 42 U.S.C. §§ 1981, 1982, and 1985(3). *Id.* ¶¶ 20-22.

Meta and Accenture filed separate motions to dismiss Plaintiff's original complaint in the California Action. SAC ¶¶ 86-87. The present action focuses on an argument that Accenture made in its motion, where Accenture argued that its alleged recommendation to Meta regarding Plaintiff's account may have been based on a legitimate Community Standards violation by Ballentine. *Id.* ¶ 33. After Plaintiff amended his complaint, Accenture, at Plaintiff's request, clarified in its motion to dismiss the amended complaint that it was referring to "a legitimate violation of another [C]ommunity [S]tandard unrelated to CSE." *Id.* ¶ 43; *see also id.* ¶¶ 37-41.

Plaintiff admits that Meta's motion to dismiss the California Action does not contain the allegedly defamatory statements that Plaintiff challenges. *Id.* ¶ 87. And Plaintiff does not assert that Meta had any involvement in Accenture's inclusion of the allegedly defamatory statements in its motion.

Instead, as to Meta, Plaintiff alleges only that (1) on September 30, 2025,

Plaintiff sent a single email to counsel for Accenture and Meta proposing mediation and Meta's counsel and Accenture's counsel both declined the invitation on behalf of their respective clients, SAC ¶¶ 27; 29-30; (2) that Accenture's counsel requested that counsel for Meta be included on communications from Plaintiff, *id.* ¶ 28; and (3) that Accenture's counsel proposed that all parties participate together in a court-ordered meet-and-confer session regarding preservation, *id.* ¶¶ 45-46. Based solely on these allegations, Plaintiff concludes that Meta and Accenture "reached an agreement or understanding to pursue a common litigation objective," *id.* ¶ 85, and seeks to hold Meta liable for Accenture's statements.

After the motions to dismiss Plaintiff's amended complaint in the California Action were fully briefed, Plaintiff filed this lawsuit and voluntarily dismissed the California Action. *See* Dkt. No. 63 ("Notice of Voluntary Dismissal"), *Ballentine v. Meta Platforms, Inc. et al*, No. 3:25-cv-7671 (N.D. Cal. Feb. 13, 2026).[1]

[1] Since dismissing the California Action, Plaintiff has also filed two additional lawsuits against Meta and Accenture, along with several other defendants, both currently pending in Florida courts. The first of these actions, filed in this court, is premised on nearly identical allegations as the California Action and raises identical claims under the federal civil rights statutes implicated in that action. *See Ballentine v. Meta Platforms, Inc. et al.,* Dkt. No. 19, No. 6:26-cv-376 (M.D. Fla. Mar. 4, 2026). The second action, originally filed in the Fifth Judicial Circuit Court for Lake County, Florida and then removed to this court, alleges claims under Florida state law based both on the alleged termination of Plaintiff's Facebook account at issue in the California Action and the alleged defamatory statements in Accenture's Motion to Dismiss giving rise to the instant litigation. *See Ballentine v. Meta Platforms, Inc. et al.*, Dkt. No.1-1 No. 5:26-cv-216 (M.D. Fla. Mar. 25, 2026). Notably, Plaintiff's most recently filed action asserts the same cause of action against Meta (civil conspiracy to defame) alleged

**Meta's citizenship and alleged connection to this forum.** Plaintiff admits that Meta is a Delaware corporation with its principal place of business in Menlo Park, California. SAC ¶ 12. Plaintiff alleges this Court nonetheless has personal jurisdiction over Meta because it "transacts business in Florida and caused tortious injury in Florida through the conduct alleged in this Complaint." *Id.* ¶ 9.

**Procedural History.** Plaintiff filed his original complaint in this action on February 9, 2026, raising claims against Meta, Accenture, Kirkland & Ellis LLP ("Kirkland"), and Devin S. Anderson, one of Accenture's attorneys in the California Action. Dkt. No. 1. Plaintiff filed a First Amended Complaint two days later, on February 11, 2026, adding Christopher W. Keegan (another attorney who represented Accenture in the California Action) as a named defendant. *See* Dkt. No. 4. On February 18, the Court ordered Plaintiff to show cause "why the case should not be dismissed for failure to sufficiently allege diversity of citizenship to support federal subject matter jurisdiction" specifically noting Plaintiff's failure to affirmatively allege the citizenship of Defendants Accenture and Kirkland. *See* Dkt. No. 11. In response to the Court's order, Plaintiff filed a motion to drop Accenture and Kirkland as defendants, and filed the operative SAC against Meta, Mr. Anderson and Mr.

---

here, based on the same underlying allegations. *Compare Ballentine v. Meta Platforms, Inc. et al.*, Dkt. No.1-1 ¶¶ 150-161, No. 5:26-cv-216 (M.D. Fla. Mar. 25, 2026) *with* SAC ¶¶ 81-95.

Keegan only. *See* Dkt. Nos. 15; 20.[2]

## III. ARGUMENT

### A. The SAC Should Be Dismissed for Lack of Personal Jurisdiction Over Meta

"A court must dismiss an action against a defendant over which it has no personal jurisdiction." *Kinney v. Mindsize, LLC*, No. 20-cv-62094-AMC, 2021 WL 3911859, at *2 (S.D. Fla. June 7, 2021) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999)). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). The plaintiff establishes a prima facie case if it "presents enough evidence to withstand a motion for directed verdict." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).

Plaintiff's sole jurisdictional allegation as to Meta is his conclusory allegation that "Meta transacts business in Florida and caused tortious injury in Florida" through the alleged conduct. SAC ¶ 9. This is insufficient to allege

---

[2] Although Plaintiff's claims relating to the alleged disablement of his Facebook account are not directly at issue in this litigation, should Plaintiff attempt to amend his complaint here to raise claims based on his disabled Facebook account or his use of other Meta products or services, Meta reserves the right to move to transfer those claims to the Northern District of California, as contemplated by Meta's Terms of Service. *See, e.g., McCarthy v. Meta Platforms, Inc.*, No. 24-cv-143220-AMC, 2025 WL 3755430, at *1 (S.D. Fla. Jan. 27, 2025) (granting motion to transfer to Northern District of California based on forum selection clause in Meta Terms of Service).

either general or specific jurisdiction over Meta.

**1. Meta is not subject to general personal jurisdiction in Florida.**

A court may assert general jurisdiction over nonresident defendants only when their "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. State of Washington, Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 317(1945)); *see* Fla. Stat. § 48.193(2) (requiring "substantial and not isolated activity" in Florida). Absent exceptional circumstances, a corporate defendant is only "at home" in a forum where it is either incorporated or has its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

Meta is undisputedly not "at home" in Florida. Plaintiff's SAC concedes that Meta is a Delaware corporation with its principal place of business in California. *See* SAC ¶ 12. And courts have consistently held that allegations that Meta transacts business in a state do not suffice to show that Meta is "at home" in the state for purposes of establishing general jurisdiction. *See Garrett-Alfred v. Facebook, Inc.*, 540 F. Supp. 3d 1129, 1136 (M.D. Fla. 2021) (finding no general jurisdiction over Facebook where alleged affiliations were "not continuous and systematic enough to render [it] at home in Florida"); *accord Romero v. Meta Platforms, Inc.*, No. 23-CV-3306-TMC, 2024 WL 3466403, at *4-5 (D.S.C. July 19, 2024) (finding no general jurisdiction over

Meta), *aff'd*, No. 24-1729, 2024 WL 5200156 (4th Cir. Dec. 23, 2024), *cert. denied*, 145 S. Ct. 1972 (2025); *Russell v. Meta Platforms, Inc.*, No. 23-CV-193-SA-DAS, 2024 WL 4800365, at *3 (N.D. Miss. May 29, 2024) (same); *Godwin v. CPF River Oaks Austin, L.L.C.*, No. 23-CV-1566-DII, 2024 WL 2732670, at *8 (W.D. Tex. May 28, 2024) (same), *appeal dismissed*, No. 24-50531, 2024 WL 5277355 (5th Cir. July 30, 2024).

**2. Meta is not subject to specific personal jurisdiction in Florida.**

To establish specific jurisdiction over a nonresident defendant like Meta, Plaintiff must show that his claims "arise out of or relate to a defendant's contacts with Florida." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015); *see* Fla. Stat. § 48.193(1) (listing acts that subject a defendant to specific personal jurisdiction). To make this determination, courts decide whether the defendant's "conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This turns on "whether *the defendant's* actions connect [it] to the *forum*." *Walden v. Fiore*, 571 U.S. 277, 288-89 (2014) (no "minimal contacts" where "no part of [defendant]'s course of conduct occurred in" the forum state).

Here, Plaintiff fails to allege any conduct by Meta in Florida whatsoever—let alone conduct related to Plaintiff's claims—that would give rise to specific jurisdiction. Plaintiff's conclusory allegation that "Meta

transacts business in Florida" does not suffice to establish specific jurisdiction over Meta, particularly where the SAC includes no allegations connecting Meta's alleged business in Florida with Plaintiff's claims. Indeed, courts routinely find the fact that Meta's services, including Facebook, are available to users in the forum does not suffice to establish specific jurisdiction there. *See Harrison v. Facebook, Inc.,* No. 18-cv-147-TFM-MU, 2019 WL 1090779, at *4 (S.D. Ala. Jan. 17, 2019) ("This Court agrees with other courts that have held that 'personal jurisdiction over Facebook may not exist simply because a user avails [her]self of Facebook's services in a state other than the states in which Facebook is incorporated and has its principal place of business.'") (quoting *Ralls v. Facebook*, 221 F. Supp. 3d 1237, 1244 (W.D. Wash. 2016)); *see also Atmos Nation, LLC v. All Fun Gifts Distribution, Inc.,* No. 16-cv-60821-JEM, 2017 WL 5171174, at *4 (S.D. Fla. July 18, 2017) (recognizing that the "mere existence of a website accessible in Florida does not by itself support specific jurisdiction over the defendant in Florida"); *Roblor Mktg. Grp., Inc. v. GPS Indus., Inc.,* 645 F. Supp. 2d 1130, 1142 (S.D. Fla. 2009) ("The mere world-wide accessibility of Karrier's websites in the absence of any actual interaction will not support a finding that jurisdiction attaches.").

Plaintiff's allegation that he was injured in Florida, which appears to be based solely on Plaintiff's residence in Florida, SAC ¶¶ 8-10, is similarly irrelevant to the specific jurisdiction inquiry. Because specific jurisdiction

focuses on the defendant's conduct, a plaintiff's allegation that he suffered injury in a state does not suffice to subject a defendant to personal jurisdiction there. *See Walden v. Fiore*, 571 U.S. 277, 288-89 (2014) (recognizing that specific jurisdiction over a defendant depends on "whether the *defendant's* actions" and not merely the plaintiff's conduct "connect [it] to the forum."); *ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1342 (11th Cir. 2025) ("Personal jurisdiction cannot be predicated on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff." (internal quotation marks omitted)).

Here, Plaintiff does not identify any suit-related conduct by Meta in or directed to Florida. Rather, the only alleged "wrong" by Meta is the alleged conspiracy to publish allegedly defamatory statements about Plaintiff in the *California* Action. SAC ¶¶ 1-95. And, as set forth in more detail below, Plaintiff does not plead that Meta engaged in any specific acts in furtherance of that purported conspiracy, much less acts in or directed to Florida. Indeed, Plaintiff's only allegation regarding Meta's purported conduct is that Meta's counsel in the California Action communicated to Plaintiff that Meta did not think mediation in the California Action would be productive, to which Accenture responded, "Accenture's position is the same as Meta." *Id.* ¶¶ 26-28. This conduct—in addition to providing no support for Plaintiff's conspiracy claim—plainly does not arise from any purported contacts Meta has with

Florida and is not alleged to have (nor could it have) injured Plaintiff. It is therefore insufficient to support specific jurisdiction. *See Garrett Alfred,* 540 F. Supp. 3d at 1136 (concluding that no specific jurisdiction existed over Facebook for claims that were not sufficiently related to Meta's Florida contacts); *Facebook, LLC v. Grind Hard Holdings, LLC*, 390 So. 3d 142, 145 (Fla. Dist. Ct. App. 2024) (finding that plaintiff failed to sufficiently allege specific jurisdiction over Facebook in Florida).

Because the SAC fails to allege sufficient facts to establish general or specific personal jurisdiction, the Court should dismiss Plaintiff's claims against Meta for lack of personal jurisdiction.

### B. Plaintiff Fails to State a Claim for Civil Conspiracy to Defame Against Meta

A complaint that "fail[s] to state a claim upon which relief can be granted" must be dismissed. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Legal conclusions couched as

factual allegations need not be accepted as true." *Id.*

To state a claim for civil conspiracy under Florida law, a plaintiff must allege: (1) "a conspiracy between two or more parties," (2) "to do an unlawful act or a lawful act by unlawful means," (3) "the doing of some overt act in pursuance of the conspiracy," and (4) "damage to plaintiff as a result of the act performed pursuant to the conspiracy." *Cohen v. McGuire*, No. 3:15-CV-133-J-34JRK, 2016 WL 3188889, at *9 (M.D. Fla. June 8, 2016). "An action for civil conspiracy must be premised on an underlying tort or cause of action." *SMS Audio, LLC v. Belson*, No. 9:16-CV-81308-DMM, 2017 WL 1533941, at *8 (S.D. Fla. Mar. 9, 2017).

Here, Plaintiff's conspiracy claim fails at the outset because Plaintiff fails to plead an agreement between Meta and counsel for Accenture in the California Action to do an unlawful act. Instead, he proffers only (i) an instance where Accenture's counsel stated that Accenture's position that mediation would not be productive in the California Action was "the same as Meta's"; (ii) a request by Accenture's counsel that Plaintiff include counsel for Meta on communications; and (iii) another instance where Accenture's counsel stated that "the court-ordered preservation meet-and-confer…should be combined with all parties." SAC ¶¶ 27-30,45-46, 85; *supra* at 4. Based on these three allegations, Plaintiff asserts that Meta and Accenture "reached an agreement

or understanding to pursue a common litigation objective." *Id.* ¶ 85.

Plaintiff's allegations regarding the parties' communications concerning mediation and the court-ordered meet-and-confer session—all procedural in nature—provide no support for Plaintiff's allegation that Meta and Accenture (through its counsel) "reached an agreement or understanding to pursue a common litigation objective." SAC ¶ 85. Plaintiff's allegation regarding the purported agreement between Meta and Accenture is a legal conclusion properly disregarded in considering the sufficiency of the complaint. *See Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy."); *Gaffney v. Rives*, No. 8:22-cv-1613-CEH-SPF, 2023 WL 6049253, at *9 (M.D. Fla. Sep. 15, 2023) ("Conclusory allegations of an agreement, without any factual basis to make the allegations plausible, are insufficient to state a conspiracy claim.").

Even if the Court accepted Plaintiff's conclusory assertion that Meta and counsel for Accenture reached an agreement to pursue a common litigation objective, Plaintiff's claim would still fail because he nowhere alleges that Meta reached an agreement to do anything unlawful. In fact, as to the alleged defamation, Plaintiff's SAC does not even plead parallel conduct by Meta and Accenture. To the contrary, Plaintiff admits that Meta's motions to dismiss did **not** contain any of the statements Plaintiff is challenging here. SAC ¶¶ 87-

88. There are, accordingly, simply no pled facts demonstrating a conspiracy of any kind. *See Alhassid v. Bank of Am., N.A.,* 60 F. Supp. 3d 1302, 1319 (S.D. Fla. 2014) (dismissing conspiracy claim because plaintiff did not "actually allege that [defendants] acted together but merely that they engaged in the same 'scheme'" because an "allegation of parallel conduct and a bare assertion of conspiracy will not suffice"); *Tucci v. Smoothie King Franchises*, *Inc*., 215 F. Supp. 2d 1295, 1300 (M.D. Fla. 2002) (dismissing conspiracy claims where "[p]laintiff does not allege, or provide the Court with, sufficient facts to infer an agreement between" defendants).

Plaintiff's civil conspiracy claim also fails for the separate and independent reason that the predicate defamation claim is barred by Florida's litigation privilege. *See Tejera v. Lincoln Lending Servs., LLC*, 271 So. 3d 97, 103 (Fla. Ct. App. 2019) ("There is no freestanding cause of action in Florida for 'civil conspiracy.' In order to state a claim for civil conspiracy, a plaintiff must allege an underlying independent tort."). Florida's litigation privilege "provides all persons involved in judicial proceedings, including parties and counsel, an absolute privilege from civil liability for acts taken in relation to those proceedings." *Cherdak v. Cottone,* No. 2:22-CV-634-SPC-NPM, 2023 WL 2044608, at *4 (M.D. Fla. Feb. 16, 2023). While Florida's litigation privilege is an affirmative defense, courts have recognized that the "litigation privilege 'may be considered in resolving a motion to dismiss when the complaint

affirmatively and clearly shows the conclusive applicability of the defense to bar the action.'" *Id.* at *5 (quoting *Clarke v. Phelan*, No. 16-cv-25217-RNS, 2017 WL 4326522, at *6 (S.D. Fla. Sept. 28, 2017)).

Such is the case here—Plaintiff's defamation claim is explicitly premised entirely on language included in Accenture's motions to dismiss in the California Action. SAC ¶ 1 ("This action arises from defamatory statements published by Devin S. Anderson on behalf of, and in defense of Accenture LLP in federal court filings that falsely implied Plaintiff committed child sexual exploitation violations.") This is fatal to the underlying defamation claim against the Accenture defendants and thus is also fatal to the conspiracy claim against Meta. *See Cherdak*, 2023 WL 2044608, at *5-7 (dismissing defamation and civil conspiracy claims because plaintiff "cannot rely on defamation as the underlying tort for his civil conspiracy claim because the allegedly defamatory statements are protected by litigation privilege."); *Levin*, 639 So. 2d at 608 (holding "the torts of perjury, libel, slander, defamation, and similar proceedings that are based on statements made [by parties or counsel] in connection with a judicial proceeding are not actionable"); *Gerard v. Wells Fargo Bank, N.A.*, No.14-cv-3935-MMM, 2015 WL 12791416, at *14 (C.D. Cal. Jan. 22, 2015) (holding that litigation privilege barred claim based on alleged misrepresentation by defendant "in its motion to dismiss" because statements

"are absolutely privileged when included in court filings").

**C. Plaintiff Should Not Be Granted Leave to Amend.**

Plaintiff should not be given the opportunity to replead his claims. Dismissal of a complaint without leave to amend is appropriate where amendment would be "futile." *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (affirming denial of request to amend complaint because proposed amendment complaint would be futile). Such is the case here for multiple reasons. *First,* Plaintiff has not pled a single fact connecting Meta's conduct to Florida, nor could he. *Second,* the underlying defamation claim will be barred by the litigation privilege no matter what additional facts are pleaded, making any amendment futile. *Kaplan v. Regions Bank*, No. 8:17-cv-2701, 2018 WL 364257, at *4 (M.D. Fla. Aug. 1, 2018) (dismissing complaint with prejudice because "amendment would be futile" where "all of [plaintiff's] claims were barred by the litigation privilege).

## IV. CONCLUSION

For the foregoing reasons, this Court should dismiss the SAC without leave to amend.

Respectfully submitted,

Dated: April 3, 2026

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: /s/ *Diana Marie Fassbender*

DIANA MARIE FASSBENDER (BN 17095)
dszego@orrick.com
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone: (202) 339-8533
Facsimile: (202) 339-8500

*Attorneys for Defendant*
*Meta Platforms, Inc.*

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Meta attempted to confer with Plaintiff by email on April 3, 2026. As of the time of this filing, Plaintiff has not responded to the conferral email. Undersigned counsel will update this conferral should Plaintiff respond to the conferral email.

/s/ *Diana Marie Fassbender*
DIANA MARIE FASSBENDER

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, and the foregoing via Email and U.S. Mail to:

Marvelle J. Ballentine
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
jayballentine@protonmail.com
yglazman.litigation@protonmail.com

s/ *Diana Marie Fassbender*
DIANA MARIE FASSBENDER

# Docket No. 66

FILED - USDC - FLMD - ORL
MAY 8 2026 PM1:31

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MARVELLE J. BALLENTINE,

*Plaintiff,*

v. Case No. 6:26-cv-00286-AGM-DCI

DEVIN S. ANDERSON;
CHRISTOPHER W. KEEGAN; and
META PLATFORMS, INC.,

*Defendants.*

# PLAINTIFF'S TIME-SENSITIVE MOTION TO DROP DEFENDANTS META PLATFORMS, INC. AND CHRISTOPHER W. KEEGAN UNDER RULE 21 AND FOR LEAVE TO FILE A NARROWED THIRD AMENDED COMPLAINT UNDER RULE 15(a)(2)

This motion is designated time-sensitive under Local Rule 3.01(f). Plaintiff's response to Meta's Motion to Dismiss, Dkt. 44, is due today, May 8, 2026, per Dkt. 48. Plaintiff respectfully requests a ruling at the Court's earliest convenience.

Plaintiff Marvelle J. Ballentine, pro se, respectfully moves under Federal Rules of Civil Procedure 21 and 15(a)(2) for the following relief:

1. An order dropping Meta Platforms, Inc. and Christopher W. Keegan as Defendants under Rule 21;

2. Leave to file a narrowed Third Amended Complaint proceeding only against Defendant Devin S. Anderson on one count for defamation; and

3. An order denying as moot Plaintiff's previously filed motion for leave to amend to the extent it sought leave to file a different proposed pleading.

## I. BACKGROUND

This action presently proceeds against three Defendants: Devin S. Anderson, Christopher W. Keegan, and Meta Platforms, Inc. Meta has moved to dismiss. Dkt. 44. The Court extended Plaintiff's response deadline to May 8, 2026. Dkt. 48. A motion for leave to amend filed by Plaintiff remains pending.

Plaintiff seeks to narrow this action. The proposed Third Amended Complaint would omit all claims against Meta Platforms, Inc.; omit all claims against Christopher W. Keegan; eliminate all conspiracy and coordination allegations; proceed only against Defendant Devin S. Anderson; and assert a single count for defamation. The defamation count would be based on Anderson's litigation publication asserting a "legitimate community standards violation" by Plaintiff without identifying any content, any standard, or any factual basis.

Plaintiff does not attach a proposed Third Amended Complaint because the Local Rules of this District do not require attachment, and because Eleventh Circuit guidance permits a movant either to attach the proposed amendment or to set forth its substance. Plaintiff sets forth the substance above.

## II. ARGUMENT

### A. Rule 21 Authorizes Dropping Meta and Keegan on Just Terms.

Rule 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Just terms exist here. Dropping Meta and Keegan removes claims and parties from the case, simplifies adjudication, preserves complete diversity, and causes no prejudice. Neither Meta nor Keegan would be required to defend a claim no longer asserted. The remaining single claim against Anderson is unaffected.

**B. Rule 15(a)(2) Favors Leave to File the Narrowed Third Amended Complaint.**

Rule 15(a)(2) directs that the court "should freely give leave when justice so requires." Leave is properly denied only on a justifying reason such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). None applies.

The proposed amendment narrows the action: it removes two Defendants, removes all claims against Meta and Keegan, eliminates conspiracy and coordination allegations, and reduces the case to one count for defamation against one Defendant. There is no undue delay because the amendment responds to the present procedural posture. There is no bad faith because the amendment reduces, rather than expands, the scope of the case. There is no repeated failure to cure because Plaintiff has not previously sought to narrow the action in this manner. There is no undue prejudice because no Defendant is required to defend a new claim, a new factual theory, or new conduct. And futility is not implicated because

the proposed pleading reduces the action to a single defamation claim against the one Defendant whose litigation publication is the subject of that claim.

### C. The Court's Prior Amendment Posture Supports the Same Result Here.

Early in this case, the Court ordered Plaintiff to address pleading and jurisdictional defects, after which Plaintiff amended and dropped two parties. The same logic applies now. The proposed Third Amended Complaint presents the narrowest version of the dispute for adjudication and removes parties whose continued presence would expand the case beyond what Plaintiff seeks to litigate.

## III. CONCLUSION

Plaintiff respectfully requests that the Court (a) drop Meta Platforms, Inc. and Christopher W. Keegan as Defendants under Rule 21; (b) grant leave under Rule 15(a)(2) to file a narrowed Third Amended Complaint asserting one count for defamation against Defendant Devin S. Anderson; and (c) deny as moot Plaintiff's previously filed motion for leave to amend to the extent it sought leave to file a different proposed pleading.

Date: May 8, 2026

Respectfully submitted,



Marvelle J. Ballentine
Plaintiff, *pro se*
7862 W. Irlo Bronson Memorial Hwy, #82
Kissimmee, FL 34747
jayballentine@protonmail.com

## LOCAL RULE 3.01(g) CERTIFICATION

Plaintiff attempted to confer with counsel for Defendants by email on May 8, 2026, regarding the relief requested in this motion. Because Plaintiff's response to Meta's Motion to Dismiss, Dkt. 44, is due today per Dkt. 48, Plaintiff was unable to obtain Defendants' positions before filing. Plaintiff will continue conferring under Local Rule 3.01(g)(3) and will supplement this certification within three days of filing or upon receipt of a position, whichever is earlier.

## CERTIFICATE OF SERVICE

I certify that on May 8, 2026, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

Marvelle J. Ballentine

# Docket No. 69

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MARVELLE J. BALLENTINE,

Plaintiff,

v.

DEVIN S. ANDERSON, META PLATFORMS, INC., and CHRISTOPHER W. KEEGAN,

Defendants.
___________________________________/

Case No. 6:26-cv-00286-AGM-DCI

Judge Anne-Leigh Gaylord Moe

**DEFENDANTS DEVIN S. ANDERSON AND CHRISTOPHER W. KEEGAN'S OPPOSITION TO PLAINTIFF'S TIME-SENSITIVE MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

Defendants Devin S. Anderson and Christopher W. Keegan (collectively, the "Attorney Defendants") respectfully request that the Court deny Plaintiff's Time-Sensitive Motion to Drop Defendants Meta Platforms, Inc. and Christopher W. Keegan Under Rule 21 and for Leave to File a Narrowed Third Amended Complaint to the extent it seeks leave to amend the complaint.

**INTRODUCTION**

Plaintiff Marvelle J. Ballentine ("Plaintiff"), proceeding *pro se*, asserts in his motion that he "seeks to narrow this action" by dropping his claims for intentional infliction of emotional distress and conspiracy against Defendant Christopher W. Keegan ("Keegan") and Meta Platforms, Inc. ("Meta"), and focusing solely on the

remaining defamation claim against Devin S. Anderson ("Anderson"). Dkt. No. 66. As the Attorney Defendants argued in their motion to dismiss, all Plaintiff's claims are meritless, and the Attorney Defendants agree that the claims against Keegan should be dismissed. Dkt. No. 26. To the extent that Plaintiff wishes to remove those claims from the litigation by stipulation or withdraw his opposition to the Attorney Defendants' pending motion to dismiss those claims, the Attorney Defendants will not oppose Plaintiff's efforts to narrow this cause of action. That said, to the extent Plaintiff seeks leave to amend the complaint for a third time, his motion should be denied for multiple reasons.

First, Plaintiff's request to amend is part of a pattern in which Plaintiff continuously seeks to avoid an adjudication of his harassing and meritless claims. Plaintiff first employed this strategy when suing the Attorney Defendants' client in California where Plaintiff amended the complaint immediately after the defendants filed motions to dismiss and then voluntarily dismissed the action after the defendants moved for a second time to dismiss Plaintiff's amended complaint. Plaintiff also voluntarily dismissed his claims against the Attorney Defendants that were first filed in Florida state court, after the Attorney Defendants filed two motions to dismiss those claims. Now, here, Plaintiff again is seeking to amend the complaint after the defamation claim against Anderson has been fully briefed in a motion to dismiss that is pending before the Court. Particularly given that Plaintiff affirms in his motion that he does not intend to add any new claims or factual allegations against Anderson, restarting the clock and requiring an additional round of duplicative dismissal briefing

on the exact same claim would cause undue delay and prejudice, and indeed, that appears to be the point of Plaintiff's request. Plaintiff should not be allowed to delay resolution of this action by amending his complaint again to plead the same defamation claim against Anderson for the sixth time across two lawsuits.

Second, amending the complaint would be futile. Plaintiff's defamation claim against Anderson is based entirely on statements made in pleadings filed in judicial proceedings and is therefore barred by Florida's litigation privilege. No amendment could overcome Anderson's immunity defense, and allowing Plaintiff to amend the complaint simply to drop other defendants and claims would be futile. This Court should deny Plaintiff's motion to the extent it seeks leave to file a Third Amended Complaint and grant the Attorney Defendants' pending motion to dismiss.

**BACKGROUND**

Plaintiff first sued Meta and the Attorney Defendants' client, Accenture LLP ("Accenture") for discrimination in the U.S. District Court for the Northern District of California. *See Ballentine v. Meta Platforms, Inc., et al.*, Case No. 3:25-cv-07671-CRB (N.D. Cal. Sept. 9, 2025) (the "California Lawsuit"). After amending his complaint in that action, two rounds of dismissal briefing, and facing a hearing on the motions to dismiss, Plaintiff voluntarily dismissed his California Lawsuit and refiled the same discrimination claims in this Court. *Ballentine v. Meta Platforms, Inc. et al.*, Case No. 6:26-cv-00376-AGM-DCI (M.D. Fla. Feb. 17, 2026).

At the same time, Plaintiff brought this action against Anderson for defamation based on arguments Anderson made on behalf of Accenture in its two motions to

dismiss filed in the California Lawsuit. Dkt. No. 1.[1] Plaintiff then amended his complaint two days after the initial filing, adding Keegan as a defendant. Dkt. No. 4. Plaintiff then amended the complaint a second time, dropping Accenture and the Attorney Defendants' law firm for jurisdictional reasons raised by the Court. Dkt. No. 20. The Attorney Defendants moved to dismiss the operative Second Amended Complaint on March 18, 2026. Dkt. No. 26. Plaintiff filed an opposition on March 23, and the Attorney Defendants filed a reply on April 3—thus completing the dismissal briefing. Dkt. Nos. 29, 42.

More than a month later, Plaintiff sought leave to file a third amended complaint. Dkt. No. 60. Plaintiff explained that his proposed amendment would "add[] factual allegations concerning conduct by Defendants that postdates the operative pleading, including conduct on and after March 25, 2026, in support of the existing defamation, civil conspiracy, and intentional infliction of emotional distress claims." *Id.* ¶ 2.

Defendants jointly opposed Plaintiff's motion. Dkt. No. 65. Defendants argued that the motion was improper because Plaintiff had "fail[ed] to either identify the substance of the proposed amendment or attach it to his request" and that leave should

[1] After initiating this action, Plaintiff also sued the Attorney Defendants, Accenture, Meta, and other parties in Florida state court. *Ballentine v. Meta Platforms, Inc., et al.*, Case No. 35-2026-CA-000494 (Fla. 5th Cir. Ct. Mar. 2, 2026). He asserted state-law claims based on the same alleged conduct in this action as well as claims based on the original conduct asserted in the California Lawsuit. *Id.* After the case was properly removed to this federal Court—and again, after the Attorney Defendants filed two dismissal motions—Plaintiff voluntarily dismissed the action without prejudice. *Ballentine v. Meta Platforms, Inc. et al.*, Case No. 5:26-cv-00213-AGM-PRL (M.D. Fla. Mar. 25, 2026).

additionally be denied because "granting leave would both be futile and unduly prejudice Defendants." *Id.* at 2.

The day after Defendants filed their opposition, Plaintiff filed this motion, seeking (1) to drop Keegan and Meta from the lawsuit, (2) to amend the complaint to "narrow[]" the complaint to be "only against Defendant Devin. S. Anderson on one count for defamation," and (3) to deny as moot Plaintiff's previous motion for leave to amend the complaint to the extent that it "sought leave to file a different proposed pleading." Dkt. No. 66 at 1-2. Nowhere in Plaintiff's motion does he assert that he intends to supplement the allegations with conduct that postdates the operative complaint, like he did in his previous motion. To the contrary, Plaintiff affirms that his proposed amendment does not include any "new claim, [ ] new factual theory, or new conduct." *Id.* at 3. Like his previous motion for leave to amend, however, Plaintiff did not attach a proposed amended complaint nor identify what, if anything, he would be adding apart from removing defendants and claims.[2]

## LEGAL STANDARD

Rule 15(a) of the Federal Rules of Civil Procedure governs amendments of pleadings. Fed. R. Civ. P. 15(a). An amendment under Rule 15(a) "is not an automatic right." *Faser v. Sears*, 674 F.2d 856, 859–60 (11th Cir. 1982). "Leave to

---

[2] If Plaintiff does intend to add substantive allegations to his amended complaint, his motion would fail for the additional reason that he has failed to "either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999).

amend may be denied (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Johnson v. United States*, 2025 WL 3471657, at *1 (M.D. Fla. Dec. 3, 2025) (quotation omitted). "The party seeking leave to amend under Rule 15 bears the burden of establishing his entitlement to it." *In re Engle Cases*, 767 F.3d 1082, 1119 n.37 (11th Cir. 2014).

## ARGUMENT

### I. Plaintiff's Motion Should Be Denied Because Amendment Would Cause Undue Delay and Prejudice.

Allowing Plaintiff to amend the complaint for a third time serves no valid purpose and would cause undue delay and prejudice to Anderson. "A court may deny a motion for leave to amend if the court finds undue delay and undue prejudice to the defendants." *Brick v. Unum Life Ins. Co. of Am.*, 2005 WL 5950106, at *3 (M.D. Fla. Oct. 13, 2005). When amending a complaint threatens to "delay[] disposition of the case," Plaintiff must "show good cause for the eleventh hour amendment." *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1287 (11th Cir. 2003) (affirming the denial of leave to amend and noting that the plaintiff did not explain the reason for the delay when the substance of the proposed amendment "was known early on"). Even for *pro se* plaintiffs, once the plaintiff has had an opportunity to amend his complaint—and especially where, as here, "a more carefully drafted complaint" still would not state a claim—"nothing compel[s] the district court to

continue to offer [the plaintiff] additional opportunities to further amend his complaint," and permitting a plaintiff to continue to file claims that are not viable "cause[s] undue delay and prejudice." *Makere v. Early*, 2023 WL 7130938, at *3 (11th Cir. Oct. 30, 2023).

Here, in addition to repeated filings that he has amended and ultimately dismissed, Plaintiff has already amended his complaint twice, including by dropping other named defendants in an earlier amendment, and he has not met his burden of showing good cause for amending his complaint again. The Attorney Defendants filed their motion to dismiss on March 18, and the full round of dismissal briefing was completed more than a month ago. Allowing Plaintiff to amend his complaint for the third time now to drop defendants and claims that he could have dropped in earlier amendments would "cause[] undue delay and expense, and result[] in unfair prejudice." *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) (noting that "[t]he facts upon which the claims … were based were available at the time the complaints were filed").

Furthermore, given that Plaintiff is not proposing to change the substance of his defamation claim against Anderson, such amendment is particularly prejudicial because it will require Anderson to engage in duplicative dismissal briefing on the exact same claim. *Peel v. R.J. Reynolds Tobacco Co.*, 2000 WL 35547520, at *1 (N.D. Ga. Jan. 6, 2000), *aff'd*, 232 F.3d 216 (11th Cir. 2000) (denying leave to amend when permitting the amendment would "mean[] the necessity for a third motion to dismiss and more months of delay in addressing the merits of the motion"). Thus, Plaintiff's

motion should be denied to the extent it seeks leave to file a Third Amended Complaint simply to remove certain defendants and claims while leaving untouched a frivolous claim that is already the subject of completed dismissal briefing. *See Nwobi v. Azar*, 2020 WL 13369424, at *3 (M.D. Fla. Aug. 5, 2020) (denying plaintiff's motion for leave to amend because the claims plaintiff sought to drop could have been voluntarily dismissed under Federal Rule of Civil Procedure 41 and additional amendment would cause undue delay "in determining whether the [] [d]efendants [were] indeed immune from suit").

Finally, Plaintiff's motion appears to be part of a pattern where he files lawsuits, imposes costs on defendants, and then seeks to avoid adjudication on the merits of his claims. In the California Lawsuit, the defendants filed their first motion to dismiss, and Plaintiff amended his complaint immediately afterwards. *Ballentine v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-07671-CRB (N.D. Cal. Sept. 9, 2025), Dkt. No. 34. Then, after the defendants filed their second motions to dismiss, and a hearing was set on the motions, Plaintiff voluntarily dismissed that action and refiled his claims in this Court. *Id.*, Dkt. No. 63; *Ballentine v. Meta Platforms, Inc. et al.*, Case No. 6:26-cv-00376-AGM-DCI (M.D. Fla. Feb. 17, 2026). In the parallel action that originated in state court, Plaintiff similarly amended his complaint one day after the Attorney Defendants moved to dismiss. *Ballentine v. Meta Platforms, Inc. et al.*, 5:26-cv-00213-AGM-PRL (M.D. Fla. Mar. 25, 2026), Dkt. No. 32. After the Attorney Defendants filed a second dismissal motion, Plaintiff moved for voluntary dismissal of the action. *Id.*, Dkt. Nos. 36, 38. And in Plaintiff's other federal action arising out of the

same facts as the California Lawsuit, he also seeks leave to amend his complaint for a second time after all defendants have moved to dismiss. *Ballentine v. Meta Platforms, Inc. et al.*, Case No. 6:26-cv-00376-AGM-DCI (M.D. Fla. Feb. 17, 2026), Dkt. Nos. 105, 111, 112. Enough is enough, and Plaintiff should not be able to delay any further this Court's resolution of the merits of Plaintiff's claim here. Plaintiff's motion, to the extent it seeks leave to amend, should be denied.

## II. Plaintiff's Motion Should Be Denied Because Amendment Would Be Futile.

In addition to causing undue delay and prejudice, Plaintiff's proposed amendment would be futile. "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). Plaintiff seeks leave to amend the complaint simply to drop defendants and claims, but such proposed amendment could not cure the defects in the remaining defamation claim against Anderson.

As set forth in the Attorney Defendants' motion to dismiss, the defamation claim against Anderson is entirely barred by Florida's litigation privilege. The alleged defamatory statements were all made in pleadings filed with the court in the California Lawsuit, and thus such statements are not actionable as a matter of law. *See United States v. Madison*, 812 F. Supp. 3d 1233, 1249 (M.D. Fla. 2025) (holding that alleged defamatory statements made in court filings are "categorically immune from liability under the litigation privilege doctrine"). As such, any amendment of the Second Amended Complaint would be futile as to Plaintiff's defamation claim against Anderson. *Kaplan v. Regions Bank*, 2018 WL 3642576, at *4 (M.D. Fla. Aug. 1, 2018)

(finding that "amendment would be futile" because "all of [plaintiff's] claims are related to [defendant's] conduct in initiating and prosecuting the Underlying Litigation" and are thus barred by the litigation privilege). On this basis alone, the Court should deny Plaintiff's motion for leave to amend the Second Amended Complaint. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) ("[D]enial of leave to amend is justified by futility when the 'complaint as amended is still subject to dismissal.'" (citation omitted)).

## CONCLUSION

For the foregoing reasons, Defendants Devin S. Anderson and Christopher W. Keegan respectfully request that the Court deny Plaintiff's Time-Sensitive Motion to Drop Defendants Meta Platforms, Inc. and Christopher W. Keegan Under Rule 21 and for Leave to File a Third Amended Complaint to the extent that it seeks leave to amend the Second Amended Complaint.

Dated: May 22, 2026

Respectfully submitted,

*Marianna C. Chapleau*

Marianna C. Chapleau (FBN. 1059142)
Patrick Malone (FBN. 1051725)
KIRKLAND & ELLIS LLP
830 Brickell Plaza
Miami, FL 33131
Telephone: 305 432-5600
Fax: 305 432-5601
mchapleau@kirkland.com
patrick.malone@kirkland.com

*Counsel for Defendants Devin S. Anderson and Christopher W. Keegan*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 22, 2026, I electronically filed the foregoing through the Middle District of Florida's CM/ECF System, which will serve Notice of Filing on Plaintiff and all counsel of record. I certify that I also caused a true and correct copy of this document to be served via FedEx to Plaintiff at the address below:

Marvelle J. Ballentine
7862 W. Irlo Bronson Memorial Hwy.
#82
Kissimmee, FL 34747
jayballentine@protonmail.com

*Marianna C. Chapleau*
Marianna C. Chapleau